## G. W. Davis et al. v. James A. Roosvelt.

### (Case No. 4064.)

1. PARTIES — EQUITY.— In trespass to try title, brought in 1871, the defendant claimed under a deed from a common vendor made to a party in 1856, from whom the defendant purchased. That deed referred to purchase money notes maturing in one, two and three years, and reserved an express lien for their payment. *Held —*

    1. That the vendor of defendant was not a necessary party.

    2. The failure to present the purchase money notes at the place where they were made payable, could not affect the issue.

    3. To defeat a recovery, the defendant should either tender the unpaid purchase money, or otherwise proffer to do equity.

2. SEAL — AUTHENTICATION.— A seal affixed to his certificate of acknowledgment of a deed by a commissioner of deeds of the state of Texas for the state of Mississippi in 1868, made no impression of a star with five points as is now required by law. *Held,* that no form of seal was prescribed in 1868, and the omission of the star on the seal did not affect the validity of the certificate.

3. CHARGE OF COURT.— When a charge, though correct, is, by reason of its general terms, defective in not embracing a full presentation of the law applicable to the case, it is too late to urge for the first time after appeal, objections to it.

4. ADMISSIONS IN PLEADING. — The admissions in the joint pleadings of husband and wife are not conclusive as between them, on a subsequent controversy involving the same question.

5. FOREIGN JUDGMENT.— The decree of a court of another state cannot affect directly the title to land in Texas.

6. EQUITY — TRUSTS.— A purchaser of land at a sale foreclosing a mortgage which was executed by the husband and wife jointly, on land held in trust by the husband for the wife, cannot be dispossessed by the heir of the wife until he has done equity by paying off the mortgage debt.

ERROR from Ellis. Tried below before the Hon. Geo. N. Aldridge.

Defendant in error, Roosvelt, brought this suit on the 13th day of December, 1871, in trespass to try title, against Robert Hodge, George W. Davis, plaintiffs in error, and others, to recover the possession of one league of land in Ellis county, claiming the title to, and the possession of, the same on the

20

1st day of January 1870, when defendants entered and took possession by force, ejecting plaintiffs, etc.

Davis filed his answer January 5, 1872. On September 15, 1879, he filed an amended answer and substitute for all other answers, presenting five issues: *First*, general issue; *second*, a plea of the statute of limitations of three years; *third*, of five years; *fourth*, of ten years; *fifth*, plea of purchase in good faith and deraigning title from Joshua James to T. J. McCray, and from him to the Telico Manufacturing Company.

The defendant in error replied: *First*, general denial; *second*, that the purchase money and obligations named in the deed from Joshua James to T. H. McCray, through whom defendant Davis claimed title, had never been paid; that an express mortgage lien had been retained in the deed to secure the payment of the purchase money; that McCray and his vendees having failed to pay the purchase money, said James, holding the superior title, had conveyed said land to Matthews, and he to said Roosvelt.

The other parties defendant did not appeal.

The intervenor, L. D. James, set up claim of title to one-half of the land as heir of his mother, Mary K. James, deceased, who was the wife of Joshua James, in the state of Louisiana, charging that John P. Watson held the land in trust for Mary K. James; that she was the equitable owner thereof, and that Roosvelt was a purchaser with notice of the claim.

To this plea of intervention the plaintiff Roosvelt replied: *First*, a general denial; *second*, that Mary K. James and Joshua James were man and wife, and that the deeds operate as an estoppel against intervenor; *third*, that Mary K. James died, leaving three children; and claiming that in any event said Roosvelt should recover one-half the land and the interest of Joshua James and C. L. James as heirs of their brother, etc.

There were two trials. On the first trial judgment was rendered in favor of George W. Davis. Plaintiff Roosvelt, and intervenor James, and defendant Hodge, appealed. The judg-

ment was reversed.[1]    Verdict and judgment in favor of the plaintiff Roosvelt; and defendant G. W. Davis and intervenor L. D. James each sued out a writ of error.

It was agreed by all the parties that the legal title to the land from Chambers was in John P. Watson on the 13th day of November, A. D. 1850.

The title from Watson to the defendant in error, Roosvelt, was as follows:   Deed with general warranty from John P. Watson to Joshua James, dated November 2, 1859; deed with general warranty from Joshua James, joined by his son, C. L. James, to Oliver Matthews, dated September 1, 1868 — the same being in payment of a debt owing by C. L. James to Matthews, and to satisfy a mortgage on the land, executed to Matthews on the 6th day of March, 1866, by Joshua James and his wife, Mary K. James; deed in usual form, with general warranty, from Matthews to the appellant, Roosvelt, dated October 31, 1868; consideration, $5,000 in hand paid. All of the deeds were duly authenticated and recorded in Ellis county.   The plaintiff's in error, Davis', title was as follows: Deed from Watson to Joshua James, same as above in Roosvelt's title; conveyance from Joshua James to J. H. McCray, with general warranty, dated June 21, 1856, and reciting the consideration in the body thereof as follows, viz: "In consideration of a certain draft drawn by the said party of the second part (McCray) for the sum of $516.60 on M. D. Cooper & Co., New Orleans, La., and due and payable on the 8th day of July, 1856; also a note of hand for the sum of $4,659.44; also one other note for the sum of $5,000.37, due and payable on the 8th day of April, 1858, and also one other and the last note for the sum of $5,341.30, due and payable on the 8th day of April, 1859 — the first note above described being due and payable on the 8th day of April, 1857,— all of said notes being drawn by said McCray, and payable to the order of J. James, and payable at the Bank of Louisiana, at New Orleans,

---

[1] NOTE.— Roosvelt *v.* Davis, 49 Tex., 463.

and to bear eight per cent. interest after maturity;" and it was further recited in the deed that "the party of the first part (James) herein reserves a special mortgage and lien upon the land conveyed, to secure the payment of the foregoing described draft and notes," which conveyance was authenticated and recorded in the Ellis county records, June 21, 1856. Plaintiff in error, Davis, read, as a part of his title, a quitclaim deed from T. H. McCray to the Telico Manufacturing Co., dated July 10, 1857, conveying to that company all his right, title, interest and claim in said land, etc.; also judgment in the district court of Ellis county against the company, by confession; execution, and levy on the land; and a quit-claim deed from the sheriff of Ellis county, for this league and other tracts, to appellee, Davis, for the consideration of $200; the deed reciting that the sheriff conveyed only "the right, title and interest of the company, etc.," dated March 1, 1859.

Neither the draft nor notes given for the purchase money by McCray to James was ever paid.

Joshua James consented that his attorney, William Croft, of Corsicana, Texas, might cancel the sale with McCray upon McCray's paying the attorney's fee of $200, and supposed the trade was cancelled. This was anterior to the war and after the maturity of the draft and notes and McCray's failure to pay. The trade with McCray was never cancelled by William Croft, as supposed by Joshua James, who resided in the state of Louisiana, but the draft and notes were surrendered by William Croft to Ferris & Getzendaner, attorneys for Roosvelt, upon their paying to him his fee of $200; and the attorneys for Roosvelt brought the draft, and the protest thereof, and notes into court and offered them as evidence. The presentation of the draft in due time, and the non-payment thereof, was duly proven by the notarial protest. The notes showed no evidence of payment.

The certificate of authentication to the deed from Joshua James to Matthews was as follows, viz.:

STATE OF MISSISSIPPI, City of Vicksburg.

I, Lazarus Lindsay, commissioner in the said state appointed by the governor of the state of Texas to take acknowledgments of deeds, etc:, to be used and recorded in the said state of Texas, duly commissioned and sworn, and residing in the said city of Vicksburg, do hereby certify that Frank T. Brooke personally appeared before me, and being duly sworn saith, that Joshua James and Clarence L. James, whose signatures appear to the amended instrument, severally acknowledged the same to be their act and deed for the consideration and purposes therein expressed, and that he, with L. D. James, the other witness, subscribed their names as witnesses thereto, at the request of the said grantors.

In witness whereof, I have hereto set my hand and affixed my official seal, this eighth day of September, 1868.

[L. S.]                                LAZ. LINDSAY,
              *Commissioner for Texas, in Mississippi.*

The certificate of authentication to deed from Matthews to Roosvelt was of similar form.

James and wife, in their answer to a suit in Louisiana, prayed "that Mrs. James be decreed the owner of the Texas land," etc. The court decreed " that John P. Watson, by good and sufficient title, transfer and reconvey to the said Mary K. James all of the land and real estate named in the said deed of trust, or acquired in his trust capacity, situated in the states of Louisiana, Texas and Mississippi, not heretofore disposed of." The conveyance was not made to Mary K. James but to Joshua James.

Mrs. Mary K. James joined her husband, Joshua James, in the mortgage deed conditionally conveying the land to Oliver Matthews, reciting in the mortgage the said conveyance from Watson to Joshua James, warranting that they had good right to convey; reciting, also, that she released her dower and right of homestead in the land, and declaring to the officer, after the conveyance was fully explained to her privily and

apart from her husband, that it was her act and deed, and that she wished not to retract it.

*S. C. McCormick* for plaintiff in error James.

I. In the absence of a statute specially prescribing the character of seal to be used by the commissioners of a particular state of the Union in authenticating their official acts, the commissioners of such state should be required to use the same kind of seal for authenticating their official acts that commissioners of other states of the Union or of territories contiguous to the Union are required by statute to use. This rule obtains upon principle and by legislative construction. R. S., art. 547.

II. Section five of the act of December, 1861 (1 Pasch. Dig., art. 3771), prescribing the requisites of the seal which commissioners of deeds for the Chocktaw, Chickasaw and Creek nations of Indians should use to authenticate their official acts, is to be taken as the law prescribing the requisites of the seal that commissioners of deeds for the state of Mississippi should, after the date of the said act, use in authenticating their official acts as commissioners. 1 Pasch. Dig., arts. 3763, 3771; 1 Pasch. Dig., arts. 3762–3771.

III. The deed of Joshua James and C. L. James to Oliver Matthews, and the deed of Oliver Matthews and wife to James A. Roosvelt, introduced in evidence by the defendant in error, were not lawfully authenticated for record; and the court erred in allowing the defendant in error to put them in evidence, over the objection of plaintiff in error, without proof of their execution.   *   *   *

IV. The Louisiana decree adjudges the land in controversy to have been acquired by John P. Watson in his trust capacity under the "trust agreement," and concludes the parties and their privies from denying the trust relation and the equitable title of Mrs. James and her children in the land. Story's Equity, vol. 2, §§ 1291, 1297; Freeman on Judgments, §§ 162, 257, 416.

V. Whether the consideration of the conveyance of the land in controversy by Mrs. Cornell to Watson emanated from Joshua James individually or from Mary K. James individually, or from Joshua James and Mary K. James jointly, the land was the separate property of Mary K. James. Hutchinson *v.* Mitchell, 39 Tex., 487.

VI. Prior to the date of the conveyance of the land in controversy by John P. Watson to Joshua James, the right of John P. Watson to control the land, or to convey it to anybody except to Mary K. James, was determined; and accordingly the conveyance by him to Joshua James was in fraud of the rights of Mary K. James and her children.

VII. The plaintiff in error, as one of only two surviving children of Mary K. James, became entitled to one-half of the land in controversy. Wade on Notice, sec. 310.

VIII. The recital in the deed of John P. Watson to Joshua James was sufficient to put Oliver Matthews and James A. Roosvelt on inquiry, imposing on them the duty as prudent men of exploring the sources of information suggested by the recital, and affecting them with notice of the proceedings in said suit No. 2530, including the trust agreement which was called for as an exhibit to the pleadings, the decree of the lower court, and the mandate of the supreme court of Louisiana. Wade on the Laws of Notice, secs. 10, 15, 18, 21, 30, 251, 270, 309, 310, 311, 312, 333, 335; 47 Tex., 118.

IX. The mortgage to Oliver Matthews was notice to him and to Roosvelt that Mrs. James had an interest in the land in controversy as her separate property.

X. Whether the land in controversy belonged to the separate estate of Mary K. James or to the community estate of herself and husband, the plaintiff in error became interested in the equity of redeeming the land on the day of the death of his mother, in view of his heirship, and his interest in the land was not divested by the deed of Joshua James and C. L. James to Matthews. Buchanan *v.* Monroe, 22 Tex., 541.

XI. The act of John P. Watson in conveying the land to

Joshua James being beyond the scope of his authority as trustee for Mary K. James, a violation of his duty as such trustee, and a fraud upon Mary K. James and her children, passing no title to Joshua James, those claiming the title of Joshua James cannot be protected in their claim to the land, even if they purchased the land for a valuable consideration and without notice of the rights of Mary K. James and her children in the land.

*Amzi Bradshaw* for plaintiff in error G. W. Davis.

*J. W. Ferris* for defendant in error.

I. A special mortgage lien having been retained in the deed from Joshua James to T. H. McCray (under whom the plaintiff in error, Davis, claims) to secure the payment of the draft and notes given for the purchase money, and the drafts and notes not having been paid, the title to the land remained in Joshua James, and as he, after default in said payment, conveyed the land to Oliver Matthews, and he to defendant in error, Roosvelt, said Roosvelt holds the better title, and the judgment was rightly in his favor. Roosvelt *v.* Davis, 49 Tex., 469; Dunlap *v.* Wright, 11 Tex., 603; Baker *v.* Ramey, 27 Tex., 59; Caldwell *v.* Fraim, 32 Tex., 326; Peters *v.* Clements, 46 Tex., 115; Ballard *v.* Anderson, 18 Tex., 385; Baker *v.* Clepper, 26 Tex., 629; Monroe *v.* Buchanan, 27 Tex., 245; Robertson *v.* Paul, 16 Tex., 476.

II. Although the notes may be barred by the statute, it is no bar to the recovery of the land on default in the payment of the purchase money. Dunlap *v.* Wright, 11 Tex., 604; Baker *v.* Ramey, 27 Tex., 59.

III. The statute of limitations could not commence to run, because the possession was not adverse until Joshua James had repudiated his contract with McCray by executing the mortgage deed to Matthews in 1866, and until the statute of limitations began to run, March 30, 1870. The possession was under and consistent with the James title. The plaintiff in error, Davis, deraigns title under the Joshua James deed to

McCray, and claims to hold possession under said title. He, Davis, testified in court that his possession was through and under said James title, and no other. Roosvelt *v.* Davis, 49 Tex., 473; Browning *v.* Estes, 3 Tex., 476; Keys *v.* Mason, 44 Tex., 144; Walker *v.* Lawler, 45 Tex., 538; Burrill's Law Dictionary, 61; 2 Smith's Leading Cases, 416; id., notes, 396, and cases cited.

IV. The statute cited by intervenor, requiring a commissioner to provide a seal with a star of five points,.etc., relates only to commissioners appointed for the Indian Territory on the northern border of Texas. Pasch. Dig., art. 3767 (see caption); id., arts. 3762, 3763.

V. The evidence introduced was sufficient to authorize the verdict of the jury against the intervenor under the charge of the court, and the judgment should not be reversed. When verdicts will not be disturbed. Wright *v.* Donnell, 34 Tex., 305; Secrest *v.* Jones, 30 Tex., 603; Gamage *v.* Trawick, 19 Tex., 58; Long *v.* Steiger, 8 Tex., 460; 1 Tex., 326.

VI. The decree of the district court in Madison parish, Louisiana, cannot in any particular affect or pass the title to the land in controversy situated in the state of Texas. Paschal *v.* Acklin, 27 Tex., 192; Moseby *v.* Burrow and wife, Texas Law Journal, March 17, 1880, and authorities there cited; Watkins *v.* Holman *et al.*, 16 Pet., 57.

VII. The act of Watson in conveying this land to Joshua James, in obedience to a decree of court in the state of Louisiana, passed the title unaffected by the decree. Paschal *v.* Acklin, 27 Tex., 192.

VIII. Mrs. James, through whom intervenor claims title, joined her husband Joshua James in the mortgage deed made to Matthews in 1866, and released all interest in the land.

IX. The recitals in the mortgage deed to Matthews, the release therein by Mrs. James, the joining of one of the heirs in the conveyance afterwards, and the witnessing thereof by the intervenor,.works an estoppel against the said heirs. Barber *v.* Harris, 15 Wend., 615; Den *v.* Vanness, 10 N. J. Law,

102; Stow *v.* Wyse, 7 Conn., 214; Colcord *v.* Swan, 7 Mass., 291; Howe on Judicial Sales, 441, and cases cited.

GOULD, ASSOCIATE JUSTICE.— The superiority of Roosvelt's title over that of Davis was settled on the former appeal. The muniments of title adduced in evidence on the second trial are the same which were passed on before by this court, and we regard the questions argued by counsel for Davis as having been substantially settled.

In regard to the alleged want of proper parties and the failure to present the purchase money notes at maturity at the place where made payable, and the question as to when time is of the essence of a contract, we remark that this is not an equitable proceeding on the part of Roosvelt to have a contract rescinded. He is simply enforcing his legal right to the land, and the defendant, to defeat a recovery, should either tender the unpaid purchase money, or otherwise proffer to do equity.

The assignments of error of the intervenor, L. D. James, present questions not considered on the former appeal.

The first assignment of error presents the question of the sufficiency of the seal affixed by a commissioner of deeds of the state of Texas for the state of Mississippi, in 1868, to his certificate of the acknowledgment of two different deeds. The impression of the seal shows no star in the center, and the name of the state (Texas) appears to be written on the impression, not engraved. The answer is that there was no statute in force at the time the certificate was made, requiring the commissioner to provide for himself a seal with a star of five points in the center. There was such a statute in regard to commissioners in the Chocktaw, Chickasaw, Cherokee and Creek nations of Indians, and there is now such a statute in regard to commissioners generally. Pasch. Dig., art. 3771; R. S., art. 547. At the time when the certificates were made, the form of the seal does not appear to have been prescribed, and the one used cannot be pronounced insufficient.

The second assignment of error objects to the refusal of two special instructions asked by intervenor, both of which, on examination, are found to refer to the question of notice. The purport of the first was, that if the recitals of the deed from Watson to James were sufficient to put a prudent man on inquiry, then Roosvelt was chargeable with notice and knowledge of the contents of the decree of the court in Louisiana, and of the pleadings in said cause. The purport of the second instruction asked was to allow the jury to consider the admissions, declarations, acts and conduct of Watson and Joshua James, prior to the deed by James to Matthews, in determining whether Roosvelt purchased with notice of an equitable title in Mrs. James, provided Roosvelt was put on inquiry by the recitals of the deed to Joshua James. There was a clause in this instruction as asked, to the effect that the allegations of a party or his attorney in his pleadings are admissible to prove the statements of such party. It is unnecessary to inquire whether or not these charges asked were in all respects correct. The court in its charge as given, allowed plaintiff no advantage whatever on the ground of being a purchaser without notice. The purport of the court's charge on the intervenor's claim may be gathered from the following extract:

"8. The decree of the district court of Louisiana does not in itself assume to convey, or direct said Watson to convey, any particular land in the state of Texas, but the jury may consider of said decree, and the recital in the deed from Watson to James, relating to said decree, in determining the ownership of said Mary K. James in the land, and give it such weight as they may think it entitled to. In regard to the ownership of the said Mary K. James in the land, the jury will take into consideration the evidence in relation to the consideration paid, and by whom paid, in the conveyance from Cornell to said Watson; the trust agreement made in 1848, and its terms; the decree of the district court aforesaid; the mortgage deed and its terms, made by Joshua James and Mary

K. James to Oliver Matthews, together with all other evi-
dence introduced; and if the jury believe from all the evidence
and the circumstances connected therewith, that at the time
the land in controversy was conveyed by Cornell to Watson,
the said Mary K. James was the equitable owner of said land,
and that said Watson held the legal title in his name in trust
for her; and if the jury, from the evidence, further believe that
said Mary K. James afterwards died, leaving the intervenor as
one of her heirs, they will find for the intervenor."

In no part of the charge was the plaintiff allowed to recover
as against intervenor, on the ground of absence of notice of his
rights.    Clearly the intervenor cannot complain of the refusal
to give his special instructions as to notice.    Under this as-
signment of error, counsel for intervenor submits numerous
propositions, the relevancy of which to that assignment does
not appear.

The third assignment of error, and the third and fifth errors
embraced in a second assignment of errors, are claimed to be
fundamental.    They present the failure of the court to instruct
the jury as to intervenor's rights if the land was community
property of James and wife, instead of her separate property,
and the failure to instruct them what it takes to constitute a
trust relation, and what an equitable title.    As the intervenor
asked no instructions on these matters, our opinion is that he
is not entitled now to demand another trial merely because
the charge did not embrace a full presentation of the law.    The
court might, with propriety, have given instructions as to the
effect of the documentary evidence, and as to what would con-
stitute an equitable title in Mrs. James.    The intervenor, how-
ever, appears to have allowed the case to go to the jury under
a charge, submitting to them whether, under " all the evidence
and circumstances," Watson held the legal title in trust for
her, and we do not think the defects in the charge can now
avail him.

The fourth assignment of error objects to the overruling
the motion for new trial, claiming that the verdict and judg-

ment were contrary to law and the evidence, and may be considered in connection with the fourth error in the assignment of fundamental errors, to wit: that the jury were told that in determining the ownership of Mrs. James, they should inquire who paid the consideration of the conveyance by Mrs. Cornell to Watson. We think the jury were properly allowed to look to the evidence outside of the decree. Intervenor claims that the judgment of the court in Louisiana and the recitals in the deed from Watson to James, concluded the parties and privies from denying the trust relation and from denying the equitable title of Mrs. James and of intervenor. But however it might be, if the question were between Watson on the one hand, and James and wife on the other, our opinion is that the decree was not conclusive to show that the land in controversy was held by Joshua James in trust. The admissions in the joint pleadings of James and wife were not conclusive as between them. The existence of the trust in the land in controversy, even as against Watson, was not specifically declared by the decree. · That decree could not directly affect the title to land in Texas, nor did it on its face purport to do so.

The alleged trustee did not convey this land to Mrs. James, but did convey it to Joshua James. What trusts attached to the land in the hands of Joshua James, was a question dependent not on the decree alone, but to be determined from other facts tending to explain the transaction. The question of fact as to the equitable interest of Mrs. James in the land was submitted to the jury and decided against intervenor, and we cannot say that the court erred in refusing to set that verdict aside.

The only other errors assigned are the first and second of those claimed to be fundamental, and are substantially disposed of by what has already been said as to the superiority of Roosvelt's legal title, and as to the purport of the charge precluding plaintiff from recovering as an innocent purchaser without notice. Our conclusion is, that the intervenor has assigned no error entitling him to claim another trial. ·

In addition to what has already been said, there are two other considerations which lead us to think that the verdict and judgment are substantially right.

If, in fact, Joshua James held the land in trust for his wife, who was equitably the owner thereof in her separate right, she joined with her husband in mortgaging the land to Matthews. The intervenor claiming as her heir a purely equitable right to the land, should not be allowed to dispossess the holder of the legal title, acquired under the mortgage, without first doing equity by paying off the mortgage debt.

If, however, the land was community property of Joshua James and wife, then it was competent for the husband as the survivor of the community to sell the land in payment of a community debt. In either case, the intervenor was not entitled to recover.

AFFIRMED.

[Opinion delivered April 23, 1880.]