THE TEXAS & PACIFIC RAILWAY COMPANY v. NANCY J. GAY ET AL.

No. 70.

86 571
88 115
86 571
89 145
91 677

### 1. Texas & Pacific Railway—Eastern Terminus.

The laws under which the Texas & Pacific Railway operates digested. The eastern terminus of the road is at the eastern line of the State of Texas, and no part of the road is in the State of Louisiana. This is not affected by the provision in the supplementary act requiring that it secure and maintain railway connection between Marshall and Shreveport.................................................... 578, 580

### 2. Receivership of the Texas & Pacific Railway.

The case presented is one in which a receiver was appointed by the Circuit Court of the United States, sitting in and for the Eastern District of Louisiana, to take possession of, operate, and control a railway no part of which was in the State of Louisiana ...................... 581

### 3. Presumptions—Jurisdiction.

Jurisdiction must depend upon the laws creating and prescribing the powers of the tribunal; and if it attempt to exercise a power not thus conferred, its judgments are not binding. If the fact on which jurisdiction depends is determined by law, then resort to the presumptions ordinarily indulged in favor of the power of a court of general jurisdiction which has assumed to act in a given case is neither necessary nor admissible....................................................... 581

### 4. Conflicting Courts—Jurisdiction.

Where one court has assumed the power to act in a given case, every lawful presumption that it did not act without jurisdiction ought to be indulged; but where it is clear that either has acted without lawful power, the other, when called upon to adjudicate the right of litigants, can not lawfully refuse to make inquiry even as to the jurisdiction of the other when this becomes necessary to the determination of the questions before it ............................................. 582

**5. Jurisdiction of United States Circuit Courts.**

In a case in which a railway chartered by act of Congress is a party, jurisdiction of a Circuit Court of the United States ought to be presumed, if the action be not one local in its nature, or the relief sought in whole or in part be not such as can be given only by a court sitting where property is situated through which the court's judgment may be enforced .................................................................... 582

**6. Receiver, when Appointed.**

A receiver can not lawfully be appointed unless deemed necessary for the preservation of property, the preservation or enforcement of rights of persons having claims against it, or to have it applied to some lawful purpose from which it has been or is likely to be diverted ........ 582

**7. Local Jurisdiction of United States Courts.**

The intention of Congress to limit the jurisdiction of Circuit Courts of the United States to persons and things within the district [in which the court sits, as well as to restrict their process. whether original or final, to the same territory, is manifested in several statutes. These statutes are cited and discussed...................................... 583

**8. Jurisdiction of United States Circuit Courts.**

Circuit Courts of the United States having only such jurisdiction as Congress has conferred upon them, these statutes (cited above) bear evidence of a broad recognition by Congress not only of the impropriety of permitting the adjudication of rights to, or in reference to property situated in one State by a court sitting in another, but also of the propriety of having the rights of citizens adjudicated by courts sitting in the States of which they are citizens or inhabitants ........ 584

**9. Same.**

Article 738, United States Revised Statutes, amended March 3, 1875, regulates proceedings relative to enforcement of liens against real or personal property situate in the district where suit is brought, and the defendant is a nonresident, and limits the effect of the decrees in such cases to the property within the district. These acts recognize the rule that property, whether real or personal, can be affected only by judgments or decrees of courts sitting within the State in which the property is situated; that jurisdiction over the property, as well as of the litigants, is essential; and that the former can exist only by reason of the fact that the property is situated within the territory over which the court is given jurisdiction, and the latter by virtue of service of process made in the manner prescribed by law.. .......... 584

**10. Judicial Districts in Louisiana.**

By act of Congress, March 3, 1881, two judicial districts were created in Louisiana, the courts in the eastern to be held in New Orleans. Courts in the other district were held in four places, one at Shreveport. This act also recognizes the fact that all suits of a local nature must be brought in the district in which the thing to which it relates is situated .................................................................. 585

**11. Receiver an Officer of Court—Powers.**

The rule is well settled, that ordinarily a receiver appointed by a court having jurisdiction to make the appointment is an officer of the court, having only such power as the order of the court under the general principles of law and due course of procedure may confer upon him.. 585

**12. Same.**

From these considerations it must follow, that a court can not confer upon a receiver power outside of the territory over which it has jurisdiction; for its process can not be effective beyond that; * * * and where the process of a court can not go and be entitled to enforcement and respect, its officers can not have power ..................... 585

**13. Jurisdiction Ascertained by Power to Enforce.**

The highest test of the jurisdiction of a court in a given case is found in the answer to an inquiry whether it has lawful power thus to enforce its judgments .................................................... 588

**14. Same.**

There are classes of cases in which courts of chancery may, through action on persons over whom they have jurisdiction, indirectly affect title to property, real or personal, situated in a State not within their jurisdiction; e. g., suits for specific performance, enforcement of trusts, relief on ground of fraud, accounting in partnership, etc. But where the suit is strictly local, the subject matter is specific property, and the relief when granted is such that it must act directly upon the subject matter, and not upon the person of the defendant, the jurisdiction must be exercised in the State where the subject matter is situated... 588

**15. Jurisdiction of Courts of Equity.**

Jurisdiction of courts of equity over the classes of cases affecting property situated without its local jurisdiction exists only when the relief sought is such that it may be given by the act of the person over whom the court exercises jurisdiction. But if the right arises from the decree and execution of its process, then the court is directly acting upon the thing over which it has not jurisdiction, and in such case the rule is inoperative ........................................... 590

**16. Cases Discussed.**

Muller v. Davis, 94 United States, 444; McElrath v. Railway, 55 Pennsylvania State, 189; and Mead v. Railway, 45 Connecticut, 223, discussed ........................................................ 591

**17. Judicial Acts Affecting Lands.**

It is conceded by the United States courts, as well as by the State courts, that jurisdiction over real property exists only in the tribunals of the country in which it is situated, and that it can not be taken possession of or sold under the order, license, or decree of a court having jurisdiction only in another State .................................. 592

**18. Judicial Sale—Foreclosure.**

A decree foreclosing a mortgage, and the process through which it may be enforced, act upon the property directly; the sale when made is essentially a judicial sale, or sale by the court, not by mortgagor..... 593

**19. Judicial Sales.**

In judicial sales, a valid decree, sale by authorized person, and confirmation are ordinarily essential to the right of the purchaser to a conveyance. The deed is but evidence of a right, and unless the court directing and confirming a sale have jurisdiction, the purchaser has no title. These depend upon power over the thing sold....................... 593

**20. Right to Appoint Receiver.**

No case can arise in which a court will have power to appoint a receiver unless there be property of which the court may take possession

through its receiver. And where the property to be administered is immovable, the power to authorize the receiver to take it into possession necessarily is local in character ................ ............... 594

**21. Local Jurisdiction.**
The line between local and transitory actions in some of the decided cases seems shadowy, but in no case can a suit the purpose of which is to subject certain property, whether real or personal, to payment of a debt, or to have it placed in possession of and under the control of a court for any purpose of administration, be termed a local action.. 594

**22. Railways, etc., Real Estate.**
Under the laws of Texas, as well as from the nature of the property itself, a railway, which includes right of way, rails. and all material placed thereon, necessary structures, etc., must be deemed real estate, or immovable property. Rolling stock and other movable property are personal property. It seems that equal reasons exist why the rolling stock, as well as the track, should be under local jurisdiction..... 595·

**23. Locality of Texas & Pacific Railway.**
But neither the track nor rolling stock of the Texas & Pacific Railway was in the State of Louisiana........................................ 596·

**24. Same.**
But even if the Texas & Pacific Railway Company owned a continuous line from Texas into Louisiana, a court in Louisiana could not, through its officers, cross the State line into Texas, or otherwise send its process into Texas. Nor can it deliver possession of land in another jurisdiction, which want of power results from absence of jurisdiction over it............................................... ......... 596·

**25. Ancillary Jurisdiction.**
Admission of necessity for the resort to a jurisdiction now frequently termed " ancillary," is simply a concession that the tribunal which is in such case termed that of primary jurisdiction is destitute of power over property situated in another State............................. 602:

**26. Same—Source of Judicial Power.**
One court can not acquire power over property not within its territorial jurisdiction through the action of another court having jurisdiction where the property is; for the jurisdiction of every court must depend on the law, and can not rest on the friendly action of another court, which is sometimes termed " comity." ............................. 603·

**27. Question in Judgment.**
We are forced to the conclusion that the Circuit Court in Louisiana had not jurisdiction over property in Texas, such as to confer upon it the power to take possession of and administer the Texas & Pacific Railway, through a receiver or otherwise................................ 603

**28. Liability of Railway for Acts of Receiver not Legally Appointed.**
A receiver acting upon a void order must be deemed to have been simply the agent of the railway company. and it is liable for injuries resulting while the railway was managed by such person, in all cases in which it would be liable had he been made its agent in the ordinary manner ............. . ........................................... 603·

**29. Collusion.**

The power of a court to appoint a receiver is based on the fact of real litigation between the parties, in which it becomes necessary in the opinion of the court to take possession of property to which the controversy in some manner relates, in order to preserve it, or if necessary to administer it for the benefit of all persons interested. If the parties have no real controversy, and desiring no lawful relief institute a suit and have a receiver appointed,   *   *   *   such receiver must be treated as the agent of the parties.................................... 604

**30. Consent Proceedings.**

When a receiver is appointed by consent between the parties to a suit, in order to accomplish a purpose not lawful in itself, the receiver must be considered the agent of the owner of the property ................ 605

**31. Collusive Appointment of Receiver.**

If a receiver was appointed by collusion of the parties interested in the property, it is unimportant whether the court making the appointment had jurisdiction; for in either case the receiver so appointed will be treated as the agent of the parties ...................... .......... 607

**32. Employes.**

The rights of an employe of such receiver would be the same as if he had been employed by an authorized agent engaged in the management of the railway........................................ ..................... 607

**33. Liability of Railway for Acts of Receiver.**

After the discharge of a receiver against whom suit has been brought, if there be facts to fix liability on a railway company's property for acts occurring during the receivership, it is proper to make the company a party and continue the litigation ........................... 608

**34. Case in Judgment.**

This suit could not be maintained as if against a receiver duly appointed, nor against the acting receiver as agent of the railway. Suit should have been against the railway..... ................................. 608

**35. Limitation—Fraudulent Concealment.**

Fraudulent concealment of a plaintiff's cause of action takes the case out of the bar of the statute of limitations. Plaintiff, however, is chargeable for neglect to ascertain the facts or ground of action...... 608

**36. Deficient Charge of Court.**

It has been held in a long line of decisions, that a charge correct so far as it applies to the facts, but omitting to state the law applicable to an issue raised by them, furnishes no ground for reversal, unless proper instruction relating to the matter omitted be asked and refused. Whatever exceptions there may be to this rule, none of them embrace a case in which the undisputed evidence establishes the facts to which the omission relates ...................................................... 609

**37. Receivership—United States Statutes.**

The act of Congress of March 3, 1887, relating to Federal receiverships, has no bearing upon suits only against a railway company........... 609

CERTIFIED QUESTIONS from Court of Civil Appeals for Second District, in an appeal from Tarrant County.

*Stedman & Thompson*, for appellant.— 1. Upon the first certified question we have to say: (1) As it appears from the concluding portion of the statement of the nature and result of the suit that appellant's line of railway extended through and into various counties in the States of Texas and Louisiana, the Circuit Court of the United States for the District of Louisiana had jurisdiction to appoint a receiver for the entire line. Muller v. Dow, 94 U. S., 277; Trust Co. v. Railway, 29 Fed. Rep., 620; The State v. Railway, 18 Md., 193.

(2) If necessary, the court would presume that the proper ancillary proceedings were had in the State of Texas. Trust Co. v. Railway, 27 Fed. Rep., 146.

(3) The court judicially knows that the Texas & Pacific Railway Company is chartered by an act of Congress; and as a Federal corporation a United States Court sitting in any State where a part of its line of railway was situated would have jurisdiction to appoint a receiver for the entire line, though it extended into another State. Railway v. McAllister, 115 U. S., 1; Osborn v. Bank, 9 Wheat., 817.

(4) Even though the Circuit Court of the United States for the District of Louisiana should be treated for the purpose of jurisdiction in the same manner as would one of the State courts of a sister State, and though we discard the foregoing propositions, the court had jurisdiction to appoint the receiver, inasmuch as a part of the railway of the Texas & Pacific Railway Company ran through the State of Louisiana. And the court having the right to appoint such receiver, and having made order placing the part of the road in Texas in his possession, and the receiver having actually taken possession thereof and operated it, his possession and operation of the road in Texas were lawful; for the law is, that the order of a court in one State empowering a receiver of its appointment to take possession of property in a foreign jurisdiction gives him the right to take possession of the property; and to that end, by the virtue of the principle of comity, the courts of foreign jurisdiction will recognize his authority and aid him to obtain possession of the property, except in those cases where local policy would be violated or the rights of citizens of the State where the property is would be injured or prejudiced. Catlin v. Silver Plate Co., 123 Ind., 477; Sercomb v. Gatlin, 128 Ill., 566; Note to Humphreys v. Hopkins, 15 Am. St. Rep., 79; Comstock v. Frederickson, 53 N. W. Rep., 713; Falk v. James, 23 Atl. Rep., 813; 20 Am. and Eng. Encycl. of Law, 66.

2. Upon the second and fifth certified questions we have to say: That even if the appointment of the receiver of the part of the road in Texas was a nullity, the plaintiffs, as representatives of the deceased, who contracted with the receiver and agreed to serve him as receiver of the part of the road in Texas, are precluded from disputing the validity of the

appointment under which the receiver acted. Railway v. Culberson, 72 Texas, 375.

3. Upon the third certified question we have to say:

(1) That if the court had jurisdiction, its exercise can not be collaterally attacked, even though there should have been consent and collusion in bringing about the receivership, and in restoring subsequently the property to the railway company. Capt v. Stubbs, 68 Texas, 222.

(2) That if the court had no jurisdiction, plaintiffs are precluded from asserting the fact, the deceased, in right of whom they claim, having contracted with the receiver and engaged to serve him as such. Railway v. Culberson, 72 Texas, 375.

4. Upon the fourth certified question we have to say: That where a jury has intervened, and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment; and the court can not look to the evidence outside of the verdict for facts on which to give judgment. Claiborne v. Tanner, 18 Texas, 78; May v. Taylor, 22 Texas, 348; Preston v. Breedlove, 45 Texas, 48.

5. Upon the seventh certified question we have to say: That there being manifest error relating to the very right and justice of the case in the rendition of the judgment upon the facts not found by the jury, no assignment of error upon this point was necessary, in view of the rule of practice that no assignment is necessary, either where the error is too apparent and palpable to escape observation, or where it goes to the foundation of the action, or where it goes to the right and justice of the decision or the merits. Hollingsworth v. Holshousen, 17 Texas, 47; Lumpkin v. Murrill, 46 Texas, 51; Railway v. Kirk, 62 Texas, 233.

6. Upon the eighth certified question we have to say: That we can not see how the Act of Congress, March 3, 1887, can have any effect upon the liability of receivers appointed by United States court, the only new feature introduced by that act, as it relates to a receiver, being to render him liable to be sued without leave of the court appointing him.

*Ball, Wynne & McCart,* for appellees, cited: Brown v. Gay, 76 Texas, 444; Railway v. Johnson, 76 Texas, 421; Ryan v. Hays, 62 Texas, 42; Hill v. Tucker, 13 How., 458; Railway v. Lehmberg, 75 Texas, 65; Bartlett v. Keim, 35 Am. and Eng. Ry. Cases, 15; Beach on Receivers, sec. 327; Trust Co. v. Railway, 39 Fed. Rep., 337; Jessup v. Railway, 36 Fed. Rep., 735; Clark v. Dyer, 81 Texas, 339; Railway v. Geiger, 79 Texas, 13; Railway v. Cox, 145 U. S., 593; Eddy v. La Fayette, 49 Fed. Rep., 807; Kline v. Jewett, 26 N. J., 476.

STAYTON, CHIEF JUSTICE.—This action was brought by the wife and minor child of John M. Gay to recover from John C. Brown, as receiver

for the Texas & Pacific Railway Company, damages for an injury received by him while in emplopment of the receiver, which resulted in his death.

At the time the action was brought John C. Brown was operating the Texas & Pacific Railway as receiver, under appointment made by the Circuit Court of the United States sitting for the Eastern District of the State of Louisana, but pending the litigation the receiver was discharged.

After the discharge of the receiver, with pleadings setting up that fact, a judgment was rendered against him, which on appeal was reversed. Brown v. Gay, 76 Texas, 444.

After this the pleadings were amended, and thereby the Texas & Pacific Railway Company was made a defendant; but this did not occur until more than one year had elapsed after the death of John M. Gay.

The pleadings show a state of facts which would have entitled John M. Gay to have maintained this action against the railway company for the injury, had he lived; but as it has been held that actions for injuries resulting in death could not be maintained against receivers under the law as it was when the injury and death in question occurred, questions have been certified to this court under pleadings and a judgment against the railway company which make them pertinent.

The questions will be considered in their order.

"First. Did the Circuit Court of the United States for the District of Louisiana have jurisdiction to take possession through a receiver of that part of the road situated in the State and Northern District of Texas?"

The Texas & Pacific Railway Company was chartered by an act of Congress, approved March 3, 1871, by which it was "empowered to lay out, locate, construct, furnish, maintain, and enjoy a continuous railroad and telegraph line, with the appurtenances, from a point at or near Marshall, county of Harrison, State of Texas; thence by the most direct and eligible route, to be determined by said company, near the thirty-second parallel of north latitude, to a point at or near El Paso; thence by the most direct and eligible route, to be selected by said company, through New Mexico and Arizona, to a point on the Rio Colorado, at or near the southeastern boundary of the State of California; thence by the most direct and eligible route to San Diego, California, to Ship's Channel in the bay of San Diego, in the State of California." Sec. 1, Act 1871.

By the fourth section of the act the company was empowered "to purchase the stock, land grants, franchises, and appurtenances of, and consolidate on such terms as may be agreed upon between the parties, with any railroad company or companies heretofore chartered by congressional, state, or territorial authority, on the route prescribed in the first section of this act."

The ninth section of the act provided for a grant of land to the company for so much of its road as was to be constructed through the Territories of the United States and the State of California.

The twenty-second section of the act provided, " that the New Orleans, Baton Rouge & Vicksburg Railroad Company, chartered by the State of Louisiana, shall have the right to connect by the most eligible route, to be selected by said company, with the said Texas Pacific Railroad at its *eastern terminus*, and shall have the right of way through the public lands to the same extent granted hereby to the said Texas Pacific Railroad Company; and in aid of its construction from New Orleans to Baton Rouge, thence by way of Alexandria, in said State, to connect with the said Texas Pacific Railroad Company *at its eastern terminus*, there is hereby granted to said company, its successors and assigns, the same number of alternate sections of public lands per mile, in the State of Louisiana, as are by this act granted in the State of California to said Texas Pacific Railroad Company."

The seventeenth section of the act required the construction of the road to commence " simultaneously at San Diego, in the State of California, and from a point at or near Marshall, Texas, as herein before described, and so prosecute the same as to have at least fifty consecutive miles of railway from each of said points complete and in running order within two years after the passage of this act; and to so continue to construct each year thereafter a sufficient number of miles to secure the completion of the whole line from the aforesaid point *on the eastern boundary of the State of Texas to the bay of San Diego*, in the State of California, as aforesaid, within ten years after the passage of this act."

Congress passed a supplementary act, which was approved on March 2, 1872, and the first section of that changed the name of the corporation to " The Texas & Pacific Railway Company."

The fifth section declared, " That the said Texas & Pacific Railway Company shall commence the construction of its road at or near Marshall, Texas, and proceed with its construction, under the original act and this supplement, or in pursuance of the authority derived from any consolidation as aforesaid, westerly from a point near Marshall, and towards San Diego, in the State of California, on the line authorized by the original act, and so prosecute the same as to have at least 100 consecutive miles of railway from said point complete and in running order within two years after the passage of this act; and so continue to construct each year thereafter a sufficient number of miles, not less than 100, to secure the completion of the whole line *from the aforesaid point on the eastern boundary of the State of Texas to the bay of San Diego, in the State of California*, as aforesaid, within ten years after the passage of this act; and the said road from Marshall, Texas, throughout the length thereof, shall be of uniform gauge."

After providing for construction from San Diego eastward, the section contains the following: "*Provided*, that said Texas & Pacific Railway Company shall be and is hereby authorized and required to construct,

maintain, control, and operate a road between Marshall, Texas, and Shreveport, Louisiana, or control and operate any existing road between said points, of the same gauge as the said Texas & Pacific Railroad; and that all roads terminating at Shreveport shall have the right to make the same running connections, and shall be entitled to the same privileges for the transaction of business in connection with the said Texas & Pacific Railway as are granted to roads intersecting therewith: *Provided, further, that nothing herein shall be construed as changing the terminus of said Texas & Pacific Railway from Marshall, as provided in the original act.*"

The Southern Pacific Railway Company was chartered by the laws of this State, and was empowered to construct, own, and operate a railway from the eastern boundary of Texas to El Paso. Spec. Laws 1852, p. 197; Spec. Laws 1856, p. 76; Spec. Laws 1860, p. 130.

The Southern Transcontinental Railway Company was also chartered under the laws of this State, and empowered to construct a railway from a point on the eastern boundary of Texas to its western boundary. Spec. Laws 1870, p. 40; Spec. Laws 1871, p. 92.

These corporations were authorized to consolidate with the Texas & Pacific Railway Company. Spec. Laws 1871, p. 489.

Under this and the act of Congress referred to, the consolidation of these roads was effected, and Congress, by an act approved June 22, 1874, ratified the consolidation, and declared, that " the roads so merged as aforesaid shall for that and all other purposes be deemed and taken to be a part of the said Texas & Pacific Railway, and shall hereafter be subject to all the provisions and limitations of the act of Congress incorporating said company, and of the supplement thereto."

These are the laws under and by virtue of which the Texas & Pacific Railway Company exists; and it is evident from them that the eastern terminus of that road is at the eastern line of the State of Texas, and that no part of it is in the State of Louisiana.

It is true that the supplementary act, as well as the original, contemplated that, through some other road, connection between the terminus of the Texas & Pacific Railway and Shreveport, in the State of Louisiana, should be made; and to that end the later act required that company to make such a connection through a road to be built, controlled, and operated by it, or by some existing road between these points of which it might be able to obtain control; but that act expressly declares, that " nothing herein shall be construed as changing the terminus of said Texas & Pacific Railway from Marshall, as provided in the original act."

Both acts proceed upon the seeming assumption that the town of Marshall was at the eastern boundary of the State of Texas; but in view of the questions submitted, it is immaterial whether the terminus be at the one place or the other, for they are both in this State.

The original act evidently contemplated that there would be connection between the eastern terminus of the Texas & Pacific Railway and the Mississippi River through the New Orleans, Baton Rouge & Vicksburg Railway, and to that end, and to secure that, provided for a grant to that company of public lands situated in Louisiana; but no grant of public lands was contemplated for any road the Texas & Pacific Railway Company might construct from its eastern terminus to Shreveport.

Congress had power to authorize the Texas & Pacific Railway Company to construct a railway other than that which it declared should be the Texas & Pacific Railway, and to operate and control it; and at the same time to declare that the one should not be part of the other.

Where the terminus of a railway is under the terms of its charter, there it necessarily ends, in fact as well as in law; and the fact that the company may be authorized to construct and operate a railway beyond that terminus can not make the two one.

A case is not presented in which one railway, under the terms of its charter, extends through or into two or more States, in one of which a receiver over the entire road was appointed by a court sitting in a State in which part of the road was; but the case is one in which a receiver was appointed by a Circuit Court of the United States sitting in and for the Eastern District of Louisiana, to take possession of, operate, and control a railway, no part of which was in the State of Louisiana.

The appointment of a receiver by a court of general jurisdiction ought to be held conclusive of the power of the court to make the appointment when that is called in question collaterally, unless it appears that in the particular case the court was without jurisdiction.

Jurisdiction must depend on the laws creating the court and prescribing its powers; and if it attempts to exercise a power not thus conferred, its judgments and decrees are not binding even upon parties, and may be declared inoperative by any other tribunal in which effect is sought to be given to them. If the fact on which jurisdiction depends is determined by law, then resort to presumptions ordinarily indulged in favor of the power of a court of general jurisdiction which has assumed to act in a given case is neither necessary nor admissible.

In the matter now under consideration, it appears through a positive law, creating the Texas & Pacific Railway Company and fixing the locality of its road, that no part of that extends into the State of Louisiana; and the inquiry is presented whether the Circuit Court of the United States sitting in a district in that State, has jurisdiction to appoint a receiver with power to take possession of a railway situated in this State, and to control and operate it under its orders.

The importance of avoiding conflict between the courts of the United States and the State courts can not be overestimated; but such harmony as should exist between them will be most surely preserved if strict re-

gard by each for its own jurisdiction be observed; for usurpation of power by either will necessarily bring conflict. Where one has assumed the power to act in a given case, every lawful presumption that it did not act without jurisdiction ought to be indulged; but where it is clear that either has acted without lawful power, the other, when called upon to adjudicate the rights of litigants, can not refuse to make inquiry even as to jurisdiction of the other, when this becomes necessary to the determination of a question upon it, without surrendering power conferred upon them for the preservation of the rights of litigants before them.

For present purposes it will be assumed that the Texas & Pacific Railway Company exists by reason of its incorporation by acts of Congress, and that this is not affected by reason of its consolidation with corporations created under the laws of this State, and the acquisition of rights through consolidation.

The Texas & Pacific Railway Company having been incorporated by acts of Congress, it is probably true that the Circuit Courts of the United States would not have jurisdiction of controversies between it and others on the ground of diverse citizenship. Neptune v. Ellzey, 2 Cranch, 445; New Orleans v. Winter, 1 Wheat., 91.

It has, however, been held, in effect, that such courts have jurisdiction over litigation to which such corporations are parties, on the ground that they were so chartered, and without reference to the character of the question on which the right of litigants may depend. Texas & Pacific Railway v. Kirk, 115 U. S., 2.

In a case in which such a corporation is a party jurisdiction of a Circuit Court of the United States ought to be presumed, if the action be not one local in its nature, or the relief sought, in whole or in part, be not such as can be given only by a court sitting where property is situated through which the court's judgment may be enforced.

The purpose for which the suit was brought in Louisiana by the Missouri Pacific Railway Company against the Texas & Pacific Railway Company is not fully set out in the statements made in connection with the questions certified; but it appears therefrom to have been such in form as it should be presumed made it proper for some court to appoint a receiver with power to take possession of the railway and property necessary to its operation belonging to the latter, and these to control and operate under its orders.

Under circumstances somewhat various receivers may be appointed; but this can never be lawfully done unless deemed necessary for the preservation of property, the preservation or enforcement of rights of persons having claims against it, or to have it applied to some lawful purpose from which it has been or is likely to be diverted if the court does not take possession of it through a receiver, and so cause it to be applied

or managed as may be deemed by the court most beneficial to all persons interested, having due regard to fixed rights.

The intention of Congress, as a general rule, to limit the jurisdiction of Circuit Courts of the United States to persons and things within the district in which the court sits, as well as to restrict their process, whether original or final, to the same territory, is manifested by several statutes.

It is provided, that "Except in the cases provided for in the next three sections, no person shall be arrested in one district for trial in another, in any civil action before a Circuit or District Court; and except in the said cases provided by the preceding section, no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process, in any other district than that of which he is an inhabitant or in which he is found at the time of serving the writ." Rev. Stats., art. 739.

That was amended by the Act of Congress approved March 3, 1887, which was corrected by the act approved August 13, 1888; and the amendment, without changing the other parts of the statute, withdraws the right to maintain an action in a district in which a defendant is found at the time of serving the writ, and adds, that " when the jurisdiction is founded only on the fact that the action is between citizens of different States, suit may be brought only in the district of the residence of either the plaintiff or the defendant."

This statute furnishes now the general rule.

The exceptions referred to are as follows:

" When a State contains more than one district, every suit, not of local nature, in the Circuit or District Courts thereof, against a single defendant, inhabitant of such State, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the State, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides."

The section further provides, that on " judgment or decree rendered therein execution may be issued directed to the marshal of any district in the same State." Rev. Stats., art. 740.

" In suits of a local nature, where the defendant resides in a different district in the same State from that in which the suit is brought, the plaintiff may have original and final process against him directed to the marshal of the district in which he resides." Rev. Stats., art. 741.

"Any suit of a local nature, at law or in equity, where the land or other subject matter of a fixed character lies partly in one district and partly in another, *within the same State*, may be brought in the Circuit or District Court of either district; and the court in which it is brought shall have jurisdiction to hear and decide it, and to cause mesne or final process to be issued and executed, as fully as if the said subject matter

were wholly within the district for which such court is constituted."
Rev. Stats., art. 742.

These laws are in express terms made applicable only to Circuit or District Courts sitting in different districts in the same State, and have no application whatever either to jurisdiction or process of a Circuit Court sitting in one State in reference to persons or property situated in another State.

Circuit Courts of the United States having only such jurisdiction as Congress has conferred upon them, those statutes bear evidence of a broad recognition by Congress not only of the impropriety of permitting the adjudication of rights to or in reference to property situated in one State by a court sitting in another, but also of the propriety of having the rights of citizens adjudicated by courts sitting in the States of which they are citizens or inhabitants.

The act 'of Congress further provides, that " When any defendant in a suit in equity to enforce any legal or equitable lien or claim *against real or personal property within the district where the suit is brought* is not an inhabitant or not found within said district, and does not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant to appear, plead, answer, or demur to the complainant's bill at a certain day, therein to be designated; and the said order shall be served on such absent defendant, if practicable, wherever found, or when such personal service is not practicable, shall be published as the court shall direct."    Rev. Stats., art. 738.

The statute further provides, that under such citation the court may adjudicate the pending matter, but that " the said adjudication shall, as regards such absent defendant without appearance, affect his property within such district only."

The proceeding here contemplated is essentially one in rem, and might frequently be applicable in cases in which appointment of a receiver would be proper or even necessary; and it authorizes the process of the court to run beyond the district or even beyond the State in which the court issuing it sits, for the sole purpose of giving notice to a defendant.

Act last referred to was amended by an act approved March 3, 1875, whereby the same rule was also made applicable to suits " to remove any encumbrance or lien or cloud upon the title to real or personal property *within the district* where such suit is brought;" and it further provided, " when a part of the said real or personal property against which such proceedings shall be taken shall be within another district, *but within the same State*, suit may be brought in *either district in said State*."

This law, however, applies only to courts sitting in a district in which the property is wholly or partly situated against which some claim specified in the act is asserted, and would not authorize the maintenance of such a suit or such use of processs when the property, real or personal, is

situated partly in one and partly in another district, unless both districts be in the same State.

Here we have a broad recognition of the rule, that property, whether real or personal, can be affected only by judgments or decrees of courts sitting within the State in which the property is situated; that jurisdiction over that as well as litigants is essential, and that the former can exist only by reason of the fact that the property is situated within the territory over which the court is given jurisdiction, and the latter by service of process made in the manner prescribed by law.

If there be any other act of Congress under which, in litigation between persons or between them and corporations, the process of a Circuit Court of the United States is authorized to run beyond the limits of the State in which the court is authorized to sit, attention has not been called to it.

By act approved March 3, 1881, two judicial districts were created in the State of Louisiana, and the courts for the Eastern District were thereby required to be held in New Orleans, while those for the Western District were required to be held at four places named in the act, one of which was Shreveport.

That act recognizes the fact that all suits of a local nature must be brought in the district in which the thing to which it relates is situated; and secures to any inhabitant of that State who is a sole defendant exemption from suit in a district other than that in which he resides.

By Acts of August 8, 1888, the districts in Louisiana were subdivided, and in cases in which there are defendants residing in different divisions process is authorized to reach them; and while those statutes have no direct bearing on the question presented, they show that Congress deemed it necessary, even in such cases, to authorize process to run beyond the division in which the court issuing it sat.

The rule, that ordinarily a receiver appointed by a court having jurisdiction to make the appointment is an officer of that court, having only such power as the order of the court under the general principles of law and due course of procedure may confer upon him, or such as may be conferred upon him by statute; that his possession is the possession of the court, and property thus placed in his hands is in custodia legis, is so fully recognized that citation of authorities in support of the rule seems unnecessary.

Prominent among the decisions so holding are the cases of Booth v. Clark, 17 Howard, 331, and Davis v. Gray, 16 Wallace, 217.

From those considerations it must follow that a court can not confer upon a receiver power outside of the territory over which it has jurisdiction, for its process can not be effective beyond that, unless authorized by statute to reach to other territory within the limits of the country to which the court belongs; and where the process of a court can not go

and be entitled to enforcement and respect, its officers can not have power. Northern Indiana Railway Co. v. Michigan Railway Co., 15 How., 242; Ableman v. Booth, 21 How., 524; Toland v. Sprague, 12 Pet., 328; Pennoyer v. Neff, 95 U. S., 714; Harkness v. Hyde, 98 U. S., 476.

In Ableman v. Booth it was truly said, that "no judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond those boundaries is nothing less than lawless violence."

Whether want of jurisdiction arises from the fact that the thing to be affected by judgment and process of a court is without its territorial jurisdiction, or without its jurisdiction for any other reason, is unimportant, for in either case the process is invalid because the court has not jurisdiction.

This brings us to the inquiry whether the Circuit Court for the United States sitting in and for a district in the State of Louisiana had jurisdiction to appoint a receiver, and through him to take possession and control of a railway no part of which was in the State or district in which the court was authorized to sit, but of which a part at least was in this State.

Such an inquiry must be determined by the laws of the United States creating Circuit Courts and determining their jurisdiction; and without making further particular reference to the statutes regulating that matter, the decisions of the Supreme Court of the United States bearing on that question will be briefly noticed.

As before said, the jurisdiction of that court over an action transitory or personal in its nature between the two railway corporations will be conceded; for if the defendant in that suit could not, for any reason, have been compelled to appear in that court, that was a matter it might waive.

In Toland v. Sprague, 12 Peters, 328, it was said: "The judiciary act has divided the United States into judicial districts. Within these districts a Circuit Court is required to be holden. The Circuit Court of each district sits within and for that district, and is bound by its local limits. Whatever may be the extent of their jurisdiction over the subject matter of suits in respect to persons and property, it can only be exercised within the limits of the district. Congress might have authorized civil process from any Circuit Court to have run into any State of the Union. It has not done so. It has not in terms authorized any original civil process to run into any other district, with the single exception of subpœnas for witnesses within a limited distance. In regard to final process, there are two cases, and two only, in which writs of execution can now by law be served in any other district than that in which the judgment is rendered; one in favor of private persons, in another district of the same State, and the other in favor of the United States, in any part

of the United States.  We think that the opinion of the Legislature is thus manifested to be, that the process of a Circuit Court can not be served without the district in which it is established, without the special authority of law therefor.''

In Railway Company v. Railway Company, 15 Howard, 233, it appeared that a railway company in Michigan, incorporated under the laws of that State, made an agreement with a railway company in and incorporated by the laws of Indiana, whereby the latter agreed that the former might build and operate a road in Indiana under the charter of the latter.

Another railway company, also established by the law of Indiana, claimed the exclusive right to construct and operate a road in that part of Indiana, and it brought a suit in the Circuit Court of the United States for the district of Michigan against the Michigan road, in which injunction was sought to restrain that company from constructing a road under the contract, in violation of the exclusive right claimed by the plaintiff.

In disposing of the case the court said:  '' In this case we shall consider the question of jurisdiction in regard to the district only.  In all cases of contract, suit may be brought in the Circuit Court where the defendant may be found.  If sued out of the district in which he lives, under the decisions he may object; but this is a privilege which he may waive.  Whenever the jurisdiction of the person will enable the Circuit Court to give effect to its judgment or decree, jurisdiction may be exercised.  But whenever the subject matter in controversy is local, and lies beyond the limit of the district, no jurisdiction attaches to the Circuit Court sitting within it.  An action of ejectment can not be maintained in the district of Michigan for land in any other district, nor can an action of trespass quare clausum fregit be prosecuted when the act complained of was not done in the district.

'' Both of these actions are local in their character, and must be prosecuted where the process of the court can reach the locus in quo.''

It was insisted in that case, as in others which will be hereafter considered, that the court having jurisdiction of the persons could enforce its judgment by acting upon them; which would seem to be true, as injunction only was sought, if there was no other obstacle to the extension of such jurisdiction; but after indicating the class of cases in which the court could thus enforce its judgments, the court said:  '' It will readily be admitted, that no action at law could be sustained in the District of Michigan, on such ground, for injuries done in Indiana.  No action of ejectment or for trespass on real property could have a more decided local character than the appropriate remedy for the injuries complained of.  And is this character changed by a bill in chancery ?  By such a procedure we acquire jurisdiction of the defendants, but the subject matter

being local, it can not be reached by a chancery jurisdiction, exercised in the State of Michigan.''

A suit was brought in the Circuit Court for a district in Tennessee, to cancel a contract for the sale of land in Mississippi, to recover money paid on the contract, and to enjoin the adverse party from enforcing it.

The relief asked was granted; but the court attempted to establish a lien on the land in Mississippi, and directed it to be sold by persons acting under its appointment, to satisfy the judgment rendered in favor of the plaintiff; but on appeal it was held, that '' the court had no jurisdiction to decree a sale to be made of land lying in another State, by a master acting under its own authority,'' and that it had no power to create a lien on the land.   Boyce v. Grundy, 9 Pet., 289.

In Railway v. Ward, 2 Black, 485, it was held, that a District Court of the United States for the district of Iowa had not jurisdiction to abate as a public nuisance a bridge across the Mississippi River, the middle of that stream being the boundary between the States of Iowa and Illinois; and in the course of the opinion it was said: '' Congress could extend the jurisdiction of the Federal courts across the Mississippi River by enlarging the judicial districts on either side; or it could confer concurrent jurisdiction on adjoining districts, extending to trespasses and torts committed within the shores of the river.   But the courts of justice can not do it unless authorized by an act of Congress.''

The direct purpose of all judicial action is relief to a litigant, which can not be given by a judgment or decree alone, but must be given, if at all, through the enforcement of the one or the other by appropriate process; and the highest test of the jurisdiction of a court in a given case is found in the answer to an inquiry whether it has lawful power thus to enforce its judgment or decree.

This rule is thus clearly expressed by the Court of Appeals of Maryland: '' It would be an idle thing in chancery to entertain jurisdiction of a matter not within its reach, and make a decree which it could have no power to enforce or to compel a compliance with.   And the absence of that very power is a good test by which to try the question of jurisdiction.   It would be a solecism to say that the chancellor has jurisdiction to decree in rem, where the thing against which the decree goes, and is alone the subject of and to be operated upon by it, is beyond the territorial jurisdiction of the Chancery Court, and not subject to its authority, and the decree, if passed, would itself be nugatory for the want of power or jurisdiction to give it effect.''   White v. White, 7 Gill & J., 210.

There are classes of cases, however, in which courts of chancery may, through action on persons over whom they have jurisdiction, indirectly affect title to property, real or personal, situated in a State not within their jurisdiction.   Such jurisdiction, however, is tentative in character,

and necessarily precarious; for it depends for effect on obedience of a defendant, and may be defeated if he be unyielding.

If in the exercise of such jurisdiction a foreign court, by imprisonment or like coercion, should compel a conveyance when, by the laws of the country where the property is, no right to a conveyance existed, then a court of the country having jurisdiction over the property might disregard a conveyance made under such circumstances.

An eminent writer thus states the rule which has been recognized: " Where the subject matter is situated within another State or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant and not upon the subject matter, although the subject matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts towards it; and it is thus ultimately but indirectly affected by the relief granted.   As examples of this rule, suits for specific performance of contracts, for the enforcement of express or implied trusts, for relief on the ground of fraud, actual or constructive, for the final accounting or settlement of a partnership, and the like, may be brought in any State where jurisdiction of defendant's person is obtained, although the land or other subject matter is situated in another State, or even in a foreign country.   On the other hand, when the suit is strictly local, the subject matter is specific property, and the relief when granted is such that it *must* act directly upon the subject matter, and not upon the person of the defendant, the jurisdiction must be exercised in the State where the subject matter is situated."   Pome. Eq., 1318; Whart. Confl. of Laws, 288–293.

This rule has been recognized by the Supreme Court of the United States, and by the decisions of the State courts.   Massie v. Watts, 6 Cranch, 148; Caldwell v. Carrington, 9 Pet., 97; Watkins v. Holman, 16 Pet., 26; Railway v. Railway, 15 How., 243; Corbett v. Nutt, 10 Wall., 475; Pennoyer v. Neff, 95 U. S., 723; Watts v. Waddle, 6 Pet., 389; White v. White, 7 Gill & J., 211; Vaughan v. Barclay, 6 Whart., 392.

In Watkins v. Holman it was said: " A court of chancery, acting in personam, may well decree the conveyance of land in any other State, and may enforce their decree by process against the defendant.   But neither the decree itself, nor any conveyance under it, except by the person in whom the title is vested, can operate beyond the jurisdiction of the court."

The property in controversy in that cause was situated in the State of Alabama, and the owner thereof sold one-half of the property and gave bond to make title, after which, without making title, he died; administration was taken out on his estate in Massachusetts, and under an act of the Legislature of Alabama the administratrix was authorized to sell the

real estate situated in that State.   The holder of the bond for title brought a suit in the Supreme Judicial Court of Massachusetts, praying that court to empower the administratrix to make title to him in accordance with the bond, and such an order was made and complied with.

It was with reference to a deed made under such circumstances that the language above quoted was used.

The case of Corbett v. Nutt was one which made it proper to inquire whether the Supreme Court of the District of Columbia had power to appoint a trustee for land in Virginia, in place of a trustee in whom title had vested under a will, that person declining to accept the trust; and in holding that this court had not such power, the same ruling was made as in Watkins v. Holman.

Jurisdiction of courts of equity, even in the classes of cases referred to, exists only when the relief sought is such that it may be given by the act of the person over whom the court exercises jurisdiction; and it is probably true that no decision made by an English or American court in modern times holds that such jurisdiction exists for the purpose of compelling a person, by conveyance or otherwise, to place property situated in a jurisdiction essentially foreign to it under the control of a court, in order that it may administer it through a receiver or otherwise.

The law is thus stated by a distinguished elementary writer: "The claim to affect foreign lands must be strictly limited to those cases where the relief decreed *can be entirely obtained through the parties' personal obedience;* if it went beyond that, the assumption would not only be presumptuous, but ineffectual."   Westl. Priv. International Law, art. 65.

That Judge Story, to say the least, doubted the existence of such jurisdiction, even with this limitation, is evident.   Story Confl. of Laws, 543, 544, 545.

This seems necessarily to be a correct limitation of the rule; for otherwise a court in one State would have power to acquire jurisdiction over lands situated in another.

If a person be under contractual obligation to convey lands, a court of equity having jurisdiction over his person may compel him to make the necessary conveyance, although the land is in another State; but in such case the decree and process through which it is enforced creates no right to the thing, and only enforces the specific right created by the contract.

The same jurisdiction may be exercised when land is held in trust, whether this arises from contract, devise, or fraud; but in such cases the court simply compels the person, over whom it has jurisdiction, to pass to another title to the specific thing on account of a fixed right to it existing when the suit was brought.

If, however, the right or claim which a court in one State attempts to enforce against lands situated in another, be one that arises from its de-

cree and execution of its process, then the court is directly acting upon the thing over which it has not jurisdiction, and to such a case the rule can not be applied.

There are a few American cases which seem to hold that jurisdiction to compel a conveyance of land or other property situated in another State exists under facts last stated; and while they have no direct application to the question certified, they are often cited to sustain the proposition that a court sitting in one State has jurisdiction to appoint a receiver, and through him to take possession of real and personal property situated in another State.

They will be briefly considered in view of that fact.

The subject matter involved in Muller v. Davis, 94 United States, 444, was a continuous line of consolidated railway, situated in the States of Iowa and Missouri, and a Circuit Court of the United States for a district in Iowa, in foreclosure of a mortgage, directed a sale of the entire road by a master; the mortgagor and trustee, in whom it seems the title was vested, being before the court.

In the course of the opinion it was said: "It is now undoubtedly a recognized doctrine that a court of equity, sitting in a State and having jurisdiction of the person, may decree a conveyance by him of land in another State, and may enforce the decree by process against the defendant. True, it can not send its process into that other State, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title. And there seems to be no reason why it can not, in a proper case, effect the transfer by the agency of the trustees when they are complainants. In McElrath v. The Pittsburg & Steubenville Railway Company, 55 Pennsylvania State, 189, a bill for foreclosure of a mortgage, in which it appeared that a railway company whose road was partly in Pennsylvania and partly in West Virginia, had mortgaged all their rights in the whole road, the court decreed that the trustee who had brought the suit, being within its jurisdiction, should sell and convey all the mortgaged property, as well that in the State of West Virginia as that in Pennsylvania. This case is directly in point, and tends to justify the decree made in the present case. The mortgagors here were within the jurisdiction of the court. So were the trustees of the mortgage. It was at the instance of the latter the master was ordered to make the sale. This court might have ordered the trustee to make it. The mortgagors who were foreclosed were enjoined against claiming property after the master's sale, and directed to make a deed to the purchaser in further assurance; and the court can direct the trustee to make a deed to the purchaser in confirmation of the sale."

Under similar facts the same ruling was made by the Supreme Court of Errors of Connecticut in Mead v. Railway, 45 Connecticut, 223.

There are a few legal propositions bearing on the question of the ex-

istence of such a jurisdiction, to which the courts of the United States and of the several States all assent.

One of these is, that jurisdiction over real property exists only in the tribunals of the country in which it is situated, and that it can not be taken possession of or sold under the order, license, or decree of a court having jurisdiction only in another State.   Wilkinson v. Leland, 2 Pet., 654; Watts v. Waddle, 6 Pet., 400; Boyce v. Grundy, 9 Pet., 275; Watkins v. Holman, 16 Pet., 26; Railway v. Railway, 15 How., 233; State of Pennsylvania v. Bridge Co., 18 How., 453; Railway v. Ward, 2 Black, 485; Corbett v. Nutt, 10 Wall., 475; Reynolds v. Stockton, 140 U. S., 272; Lewis v. Darling, 16 Pet., 13; Carpenter v. Strange, 141 U. S., 105.

A decree foreclosing a mortgage and the process through which it may be enforced acts upon the mortgaged property directly; the sale when made is essentially a judicial sale, which has frequently been declared to be a sale by the court.

In Williamson v. Berry, 8 Howard, 546, a judicial sale was defined to be " one made under the process of a court having competent authority to order it, by an officer legally appointed and commissioned to sell;" and unless the decree directs otherwise, the usual mode of procedure and the effect of each act are thus stated:

" The usual mode of selling property under a decree or order in chancery is a direction that it shall be sold with the approbation of a master in chancery, to whom the execution of the decree in that particular has been confided.   It matters not whether the sale is public or private by a person authorized to make it, but that the approbation of the master in either case completes the title.   Before, however, a purchaser can get a title, he must get a report from the master that he approves the sale, or that he was the best bidder, accordingly as the sale may have been made either privately or at auction.   The report then becomes the basis of a motion to the court, by the purchaser, that his purchase may be confirmed. Notice of the motion is given to the solicitor in the cause, and confirmation nisi is ordered by the court, to become absolute in a time stated, unless cause is shown against it.   Then, unless the purchaser calls for an investigation of the title by the master, it is the master's privilege and duty to draw the title for the purchaser, reciting in it the decree for sale, his approval of it, and the confirmation by the court of the sale, in the manner that such confirmation has been ordered.   We have been thus particular, for the purpose of showing the office of the master in relation to a sale, and what is meant by subjecting a sale to the approval of a master, and to show that such a sale, until approved by the master and confirmed by the court, gives no title to a purchaser of an estate which he may have bargained to buy."

In Blossom v. Railway Company, 3 Wallace, 207, in which sale under foreclosure of a mortgage came in question, it was said:  " It is true

that the marshal or master, as the case may be, is the officer of the court, and that as such his acts and proceedings are subject to the revision and control of the court. In sales directed by a court of chancery, says Judge Story, the whole business is transacted by a public officer, under the guidance and superintendence of the court itself. Even after the sale is made, it is not final until a report is made to the court, and it is approved and confirmed.''

Reference to these matters has been made for the purpose of illustrating the proposition that judicial sales, whether made on foreclosure of mortgage or for some other purpose, are, in effect, sales made by the court directing the sale; and it is difficult to avoid the conclusion that the rule asserted in Muller v. Davis, and other cases cited, has no application in any case in which a sale of the thing is necessary before any person can become entitled to have it conveyed to him; for in such cases it is the decree, sale, and confirmation, and payment of the purchase money, which give the right to the conveyance, and all these for efficacy must depend on the jurisdiction of the court, through its decree and process, to act directly upon the thing.

The fact that a person has executed a mortgage does not authorize any court to require him to convey the mortgaged property to the mortgagee or to any other person; nor does the fact that a mortgage gives power to a trustee named in it to sell the mortgaged property on. failure of mortgagor to pay the sum so secured, authorize him to convey on failure of mortgagor to make such payment; but in either case there must be a sale made under the mortgage before any person can become entitled to a conveyance.

A deed is but evidence of a right; and in case of judicial sales, a valid decree, sale by an authorized person, and confirmation are ordinarily essential to the right of a purchaser to a conveyance.

These and compliance with the terms of sale create the right to a conveyance; and they can have no legal existence unless the court directing and confirming the sale had jurisdiction.

The right of a purchaser at such sales rests on the fact that a sale was made in pursuance of decrees and orders made by a court in the exercise of lawful power over the thing sold, and not upon a prior right to the thing, which the court simply enforces by compelling the adverse party to make a conveyance which he ought to have made without coercion; and there is at least a seeming inconsistency in holding that a court has power to decree a sale of property, cause it to be sold by its own officer acting under its process, and to confirm the sale, but that to perfect the title of the purchaser it is necessary to compel the owner to make a conveyance.

No case can arise, unless under exceptional legislation, in which a court having jurisdiction to decree the sale of property, and that to make under

its own process, has not power to pass whatever title the defendant has without resort to any aid whatever from him.

To base jurisdiction to decree the sale of land and to sell it, although it be not situated within the territory over which the court has jurisdiction, on the proposition that the court has power, in a different but proper case, to compel a person before it to make a conveyance he is under obligation to make, without reference to any action of the court, seems to us illogical; for the powers are not of the same character, nor the one in any respect dependent on the other.

One is a power exercised directly on the person over whom the court has jurisdiction; while the other operates, if at all, as directly on the thing not within its jurisdiction; for if the decree directing the sale and sale made under it be not given full effect, the purchaser can have no right to a conveyance.

Substance and not form ought to be regarded.

No case can arise in which a court will have power to appoint a receiver unless there be property of which the court may take possession through its receiver; and if the property be immovable, or movable, but so connected with immovable as are cars or other like property necessary to and used in operating a railway, then the suit in which a receiver to take possession of them may be appointed is necessarily one local in character; for in such case the court operates directly upon the thing.

Such a proceeding is not one strictly in rem, but such is its nature; and under general rules everywhere recognized, such proceeding can be had only where the thing to be taken into possession is within the territory within which the court has power to act.

The line between actions termed local and transitory, in some of the decided cases, becomes shadowy; but in no case can a suit the purpose of which is to subject certain property, whether real or personal, to payment of a debt, or to have it placed in possession of and under control of a court for any purpose of administration, be termed other than a local action.

The difference between local and transitory actions was thus stated in case of Mostyn v. Fabrigas, 1 Cowper, 161, by Lord Mansfield: "There is a formal and substantial distinction as to locality of trials. I state them as different things; the substantial distinction is, where the proceeding is in rem, and where the effect of the judgment can not be had, if it be laid in the wrong place. That is the case of all ejectments where the possession is to be delivered by the sheriff of the county; and as trials in England are in particular counties, the officers are county officers; therefore the judgment could not have effect if the action was not laid in the proper county."

It has sometimes been stated that the principles thus announced furnished simply a technical rule in reference to venue, and that they had.

no bearing on the more substantial question of jurisdiction; but the language of the great judge is not susceptible of such a construction.

The case of British South Africa Company v. Compantriade Mocambique, Appeal Cases, 602, decided in the House of Lords in the year last past, sets all such questions at rest, so far as the English courts are concerned. The opinion in the case may be read with profit on the question of extra-territorial jurisdiction of the courts of that country, and it is not without value as to the general claim for equity jurisdiction already considered.

The principles stated in Mostyn v. Fabrigas met with the approval of Chief Justice Marshall in Livingston v. Jefferson, 1 Brockenbrough, 209, and in deference to what he understood to be the difference between such actions at common law, he felt constrained to hold that an action of trespass quare clausum fregit was a local action.

In Casey v. Adams, 102 United States, 66, there was a fund in reference to which it became necessary to settle priorities between creditors, and a question arose whether this should be done by the court where the fund was, or by a court sitting in the parish where the national bank to which the fund belonged was situated.

The act of Congress permitted suits to be maintained against such associations in the county or parish in which the bank was located, and it was contended that the proceeding could be maintained only in that parish.

In disposing of the question the court said: " The distinction between local and transitory actions is as old as actions themselves, and no one has ever supposed that laws which prescribe generally where one should be sued included such suits as were local, either by statute or the common law, unless it was expressly so declared. Local actions are in the nature of suits in rem, and are to be prosecuted where the thing on which they are founded is situated. *  *  * The proceeding in this case was local in its nature. It related to property in the parish of Lafourche, which had been seized and sold under process from the District Court of that parish."

Under the laws of this State, as well as from the nature of the property itself, a railroad, which includes the right of way, rails, and all other material placed thereon, or on other land used in connection therewith for permanent use, as well as all necessary structures, such as station houses for storage of freight and accommodation of passengers, water tanks, and like structures, must be deemed real estate or immovable property; but the rolling stock and other movable property of such a company is declared by the Constitution to be personal property. Const., art. 10, sec. 4.

Under the settled rules of law, can such property be taken possession of by a court having jurisdiction only in another State, if the property be situated in this?

Looking to the relation of rolling stock and other movable property necessary to the operation of a railway, and to the public use of the entire property, the same reasons will be seen to apply for holding such property subject to seizure, possession, or sale only by a court having jurisdiction within the territory where the property is situated, as apply to the seizure, possession, or sale of immovable property, even if it could be held that the same rule in this respect does not apply to movable as well as immovable property.

Whether the lex rei sitae or the lex domicilii be applied to the movable property owned and used by the Texas & Pacific Railway Company, is unimportant; for under neither was its situs in the State of Louisiana, unless there in fact; and if in course of railway traffic some of the movable property belonging to it was in fact in Louisiana when the receiver was appointed, that could not confer on the court making the appointment jurisdiction over property not so situated.

The same result would necessarily follow, even if under the act of Congress or some law of the State of Louisiana the railway company had acquired and then possessed in the State of Louisiana property movable or immovable, unless it be the law that ownership and possession of property in one State, with jurisdiction over the person of the owner, is sufficient to confer upon a court only having jurisdiction therein power to take possession and control of other property situated in another State.

The act of Congress, as before seen, in effect, declares that the eastern terminus of the Texas & Pacific Railway shall be at Marshall or at the eastern line of this State, and no railway east of that line constitutes a part of that, even though it may be owned and operated by that company. If, however, the Texas & Pacific Railway, as a continuous line under common ownership, extended into the district in which the Circuit Court making the appointment had jurisdiction, we do not see that, under the acts of Congress before referred to, it would have jurisdiction to appoint a receiver, and through him or otherwise to take possession of that part of the railway situated in Texas, even if the decision in Muller v. Davis be correct when applied to the facts of that case; for that decision recognizes the law to be that the court "could not send its process into that other State, nor can it deliver possession of land in another jurisdiction."

If that court could not have power to place a private owner in possession, it certainly could not take possession through its receiver or otherwise; for the incapacity, in the one case as in the other, results from the absence of jurisdiction over the property.

If it were the ownership of property which gives a court jurisdiction over it, then it would exist wherever the court has jurisdiction over the person of the owner; but under the acts of Congress, jurisdiction over property is not founded on ownership, but on the locality of property,

although ownership may become a controlling fact in settling the rights of parties.

This being true, that a part of a connected and entire property may be within the jurisdiction of the court can not confer upon it jurisdiction to take possession or otherwise deal directly with that part situated in a State within which the court has not jurisdiction.

This is illustrated by the case of Railroad Company v. Ward, 2 Black, 485, and by other cases before referred to.

If the railway corporation could have been compelled to convey its property here situated to the court's receiver—a power which the president and directors of the company, or even its stockholders, could not exercise under the laws of this State—this would not remove the difficulty as to jurisdiction; for if the receiver could thus be clothed with title to the property, the disposition of it would rest on the decrees of the court appointing him; for these are the foundation of every judicial sale or disposition of property through a court, when not made on account of an existing right to property through which the person to whom it ought to be conveyed is entitled to it, without reference to the decrees of any court, and the receiver's possession would still be the possession of the court.

Let the matter be obscured as it may, in such cases the court acts directly on the property; sells it if it be sold, conveys it if it be conveyed, and possesses it if it be in any manner placed in the hands of its receiver.

In Moseby v. Burrow, 52 Texas, 396, it appears that a resident of the State of Arkansas brought an action in this State against a corporation in Tennessee, whose property there was placed in the hands of a receiver by a chancery court of that State. The corporation had lands here, which were attached after they had been conveyed to the receiver under the order of the court that appointed him, by the officer of the corporation to whom the lands had been conveyed in trust for it; and in the action here the receiver asserted right to the land against the attaching creditor.

The Supreme Court of this State refused to recognize his right, or the jurisdiction of the court that appointed him to affect in the manner attempted lands situated in this State, and applied the rules announced in Booth v. Clark and in other cases cited in the opinion.

In Morris v. Hand, 70 Texas, 481, it appeared that Hand made a contract with Fox, such as could be specifically enforced, to convey lands in Texas; and they both being residents of Montgomery County, in the State of New York, Fox obtained a decree from the Supreme Court of that county directing Hand to make to him a conveyance, or to pay a named sum of money.

Hand did not comply with the decree, but was subsequently adjudged insane, and Brown was appointed committee of his estate, and in pursuance of a decree directing him to do so, Brown conveyed the land to Fox.

In 'a controversy here between the heirs of Hand and a person holding under the conveyance made by Brown, it was held to be "settled without conflict of authority, that courts of one country or State have no authority under any circumstances to divest the title to real estate situated in a foreign State or country, or to direct the sale of such land to be made by any one occupying a fiduciary capacity."

The opinion, however, recognized the rule, that in proper cases such relief might be given through personal process against the person who had obligated himself to convey.

Decisions doubtless may be found in which it was held in England, at an early day, that chancery courts of that country had power to appoint receivers and take possession through them of property in Ireland, in the colonies, and in countries having no governmental connection with England; but as said in Booth v. Clark, "orders have been given in the English chancery for receivers to proceed to execute their functions in another jurisdiction, but we are not aware of its ever having been permitted by the tribunals of the last."

It would be useless to speculate upon the theories upon which the English courts proceeded in asserting such a jurisdiction; but so far as we are advised, it has not been asserted or enforced in any recent case; and except as permitted by acts of Parliament, it probably would not be asserted even within territory part of the British Empire outside of England.

As early as 1834 such a jurisdiction was denied by an Irish chancery court, which refused even to give to a decree rendered by a chancery court in England such prima facie effect as to permit it to be made the basis of a suit affecting property situated in Ireland, or to carry out its decree appointing a receiver to manage property there.

While the opinion of the lord chancellor, in the House of Lords, seemed to assert such jurisdiction in an English chancery court, that high tribunal, on appeal from the decree of the Irish court, remitted the entire case to that court for decision, and directed it to have a receiver appointed. Noulditch v. Donegal, 8 Bligh, 301.

If, however, under the laws of England chancery courts may exercise such jurisdiction over property situated in any part of the British Empire, that would furnish no criterion by which to test the territorial jurisdiction of a Circuit Court of the United States, which can exist only when and where Congress has conferred it. A Circuit Court of the United States for a district in Louisiana, unless it be conferred by some act of Congress, has no greater power over property here than would have any court of Louisiana possessing general equity jurisdiction; and that Texas and Louisiana are in the same circuit is of no importance.

It is true that some of the Circuit Courts of the United States have asserted power to appoint receivers for continuous lines of railway extending through two or more States, and through them to take possession of

such parts of railways as were without the State in which the courts were given jurisdiction; and some reference will be made to the cases, from which it will be seen that their rulings are not harmonious.

In Wilmer v. The Atlanta & Richmond Air Line Railway Company, 2 Woods, 417, a receiver was appointed to take possession of a railway belonging to one corporation extending into or through three States. The appointment was made by a Circuit Court sitting in Georgia, and its ruling was based on the assumed power of the court by acting upon the owner to compel submission to its jurisdiction.

The only case cited in support of the ruling, other than such as assert the power of courts of equity already considered, was the case of Ellis v. Railway Company, 107 Massachusetts, 1, which was a case in which it appears that the Supreme Court of Massachusetts on original bill appointed receivers of a road situated in and incorporated by the laws of that and other States; but no question was raised or considered as to the power of the court to do so, and the receivers were subsequently removed and the railway placed in the hands of trustees who were entitled to its possession and management under the terms of the mortgage which it was the purpose of the bill to foreclose.

While application for appointment of a receiver was pending in case of Wilmer v. Railway Company, a court of the State of Georgia appointed a receiver over so much of the road as was in that State, and like steps were taken by Circuit Courts of the United States in each of the other States through or into which the railway ran.

Application was made to the Circuit Court sitting in Georgia, by its receiver, for writ of assistance to put him in possession of so much of the road as was in possession of the receiver appointed by the State court, but no such relief seems to have been asked as to other parts of the road which were in the possession of a receiver appointed in the other States. The application was disposed of by an opinion written by Circuit Justice Bradley, in which it was held, that the State court was entitled to possession, because its possession was prior, notwithstanding action looking to the appointment of a receiver was first commenced in the Circuit Court.

No question was raised or discussed as to the jurisdiction of the Circuit Court over so much of the road as was without the State of Georgia; but from the opinion it is difficult to resist the conclusion that the eminent judge did at least entertain serious doubts of the power of the Circuit Court to appoint a receiver over so much of the road as was not in that State.

In case of Wabash, St. Louis & Pacific Railway Company v. Central Trust Company, a Circuit Court of the United States for the Eastern District of Missouri appointed receivers over a railway which ran through the States of Missouri, Illinois, and Indiana, and into the States of Ohio,

Michigan, and Iowa, who under its orders took possession of the entire road.

The bill under which this was done was filed by the railway company, but subsequently trustees in a general mortgage filed a cross-bill asking foreclosure.

Bills similar to that filed in the court in Missouri seem to have been filed in Circuit Courts in Illinois, and perhaps in other States, for the purpose of having, as seems to have been usual at the time, the same receiver appointed in each jurisdiction, and this was done; but as is to be inferred from a case hereafter to be noticed, this was not done for the purpose of having the property situated in Illinois administered by the Circuit Courts sitting in that State, but for the purpose of giving effect to the appointment made by the Circuit Court in Missouri.

After these transactions occurred, bondholders brought suits in the Circuit Court of the United States for the Northern District in Illinois, to foreclose mortgages held to secure the bonds held by them, in which it was asked that the receivers appointed by the Circuit Court for Missouri should be removed and some other person appointed.

The court entertained jurisdiction over so much of the property as was within the district, removed the receivers theretofore appointed by the Circuit Court in Missouri, and appointed another; but refused to exercise jurisdiction over so much of the property as was within the same State, but in another district.

In disposing of the question the court said, " that courts of equity cannot acquire extra-territorial jurisdiction over property by appointing receivers," cited Booth v. Clark as authority, and held that the decision in Muller v. Davis did not justify the procedure of the Circuit Court for Missouri.    Atkins v. Railway, 29 Fed. Rep., 162.

The court in Missouri in effect rescinded so much of its order as applied to the property over which the court in Illinois took jurisdiction, and gave possession to the receiver appointed by the latter; but insisted that the decision in Muller v. Davis was conclusive of the propriety and legality of its former action.    Central Trust Co. v. Railway, 29 Fed. Rep., 618.

In Beers v. Railway Company, 26 American and English Railway Cases, 441, substantially the same facts were involved, and the same result was reached.

In the case of Blackburn v. Railway Company, 2 Flippen C. C., 525, it appears that the Legislatures of Alabama, Mississippi, and Tennessee each incorporated railway companies bearing the same name, the act of incorporation in States last named being identical; but it does not clearly appear from the opinion whether all the acts authorized consolidation of the three corporations.    The railways were constructed, and the compa--

nies consolidated so far as they were authorized, after which bonds were issued, secured by mortgage on the railway.

Suit was brought on some of the bonds, in which foreclosure was asked, in the Circuit Court of the United States for the Western District of Tennessee, and that court appointed a receiver over the railway situated in the three States, but he failed to get possession of that part in the State of Alabama, which was placed in the hands of a receiver by a court of that State, and subsequently sold in foreclosure of mortgage. The court held that it had jurisdiction to appoint the receiver, to foreclose the mortgage on the railway in the three States, and to sell it.

The case of Muller v. Davis was again relied on in support of the jurisdiction claimed, and the same course of reasoning followed in that case was adopted.

If the court in Alabama, under whose decrees a receiver was appointed and the property sold, had jurisdiction of the proper persons to make a decree which would bind the property, what would be the relative rights of a purchaser under the decree made by that court and a purchaser under decree rendered by the Circuit Court in Tennessee, if their rights were not affected by priority of mortgage?

The Mercantile Trust Company filed a bill in the Circuit Court of the United States for the Southern District of Ohio, against the Kanawha & Ohio Railway Company, a corporation existing under the laws of Ohio and West Virginia, a part of whose road was in each State, for the purpose of foreclosing a mortgage, and a receiver was appointed.

Subsequently a bill was filed in the Circuit Court of the United States for West Virginia, which consisted of a copy of the bill filed in the court in Ohio, with prayer that the court take ancillary jurisdiction, and asking that the court confirm the order of the court in Ohio appointing a receiver of the entire property, and make such orders as might be necessary to give him possession and control of it.

The purpose of the proceeding in West Virginia is thus stated by Mr. Justice Harlan: "The purpose of the parties by whom or at whose instance the suit here was instituted, was to have the entire mortgaged property administered under the orders of the court in Ohio, in which the suit for foreclosure was brought; and that nothing was desired nor expected from this court except an order appointing or confirming the appointment of Kelley as receiver, and such other orders as may be necessary to vest in him the possession and control of such of the mortgaged property as was in this district."

The case of Muller v. Davis was relied upon again as authority for the action of the court in Ohio, but it was held not to be applicable.

The learned judge there declares, if the plaintiff "desires the active intervention of this court in respect to the mortgaged property in West Virginia, such intervention should only occur in a separate, independent

suit, of which it may take cognizance, and in which, if proper or neces- sary to do so, this court may lay its hands upon the property within this district, and if need be administer it by a receiver directly amenable to its authority, for the benefit of all parties interested, of whatever State they may be citizens. The request that this court will simply confirm the appointment of a receiver made in another circuit, and by its order invest that receiver with the possession and control of the mortgaged premises within this district—no other relief being contemplated—is, in effect, a request that this court will compel all who have claims and rights in respect to the mortgaged property situated in West Virginia to seek relief in the original suit for foreclosure pending in another State; and this notwithstanding such parties may have the right, under existing legislation, to invoke the jurisdiction of this court, or of some court of general jurisdiction established by this State. It might be well if Congress would so enlarge or regulate the jurisdiction of the courts of the United States as to enable a Circuit Court in which is brought an original suit for the foreclosure of a mortgage resting upon an interstate railroad to take actual possession, by its officers, of the entire line, and of all the mortgaged property, wherever situated, and administer it for the benefit of all concerned, preserving in that mode the unity of the railroad, and the just rights of mortgagors, mortgagees, creditors, as well as those of the general public interested in commerce among the States. But there has been no such legislation, and we do not see our way clear to effect any such result by judicial orders merely.''

The case of The State v. Railway Company, 18 Maryland, 193, is frequently referred to as authority for the proposition, that a court may exercise extra-territorial jurisdiction and appoint a receiver, and through him take possession of a continuous line of railway running into another State; but we do not understand the court to have made such a ruling. Counsel for both parties conceded the nonexistence of such jurisdiction, and the opinion of the court, in which it is said, that `` the consideration that the authority of this court can not extend beyond the territorial limits of the State in the exercise of its remedial power, does not deter it from acting in a case within its acknowledged jurisdiction, to the verge of those limits,'' evidences the fact that the court was of the same opinion.

The purpose of that suit was to compel the railway company to apply its receipts not necessary for its operation, in accordance with contract, to payment of debt to the State, and by injunction to prevent the misapplication of funds thus arising.

Admission of necessity for resort to a jurisdiction now frequently inaptly termed ``ancillary,'' is simply a concession that the tribunal which is in such cases termed that of primary jurisdiction is destitute of power over property situated in another State; for if this be not true, neither

excuse nor necessity can exist for action by another court having jurisdiction in the State where the property is.

A court clothed with full power to administer property needs no aid from another; and if in the exercise of lawful power it has taken possession of property through its receiver, interference with that by another court would be wrongful.

One court can not acquire power over property not within its territorial jurisdiction through the action of another court having jurisdiction where the property is; for the jurisdiction of every court must depend on the law, and can not rest on the friendly action of another court, which is sometimes termed "comity."

The statute now in force in this State declares, "If the property sought to be placed in the hands of a receiver is situated within the limits of this State, no other court than one within the limits of this State shall have power to appoint any receiver of said property." Sayles' Civ. Stats., art. 1740b.

This asserts a rule of comity which the courts of this State since its passage must observe; but it also asserts a jurisdictional rule, which, from the nature of suits in which such appointments may be made, is applicable everywhere, in the absence of such a statute.

What power Congress might confer on a Circuit Court for a district in one State over property situated in another State is not the question involved in this case. That question is, what jurisdiction has it conferred on such courts?

The acts of Congress, on which solely depend the jurisdiction of Circuit Courts, clearly manifesting intention, even in actions transitory in their nature, to have the rights of litigants determined, as far as may be practicable, in courts of the locality in which they live, and to confer jurisdiction over actions or suits local in nature only on courts having jurisdiction in the territory in which the thing in litigation is situated, we are forced to the conclusion that the Circuit Court in Louisiana had not jurisdiction over property in Texas, such as conferred upon it power to take possession of and administer it through a receiver or otherwise.

The second question certified is: "If no such power existed, would the negligent act of a receiver thus appointed, resulting in death while operating the road, in Parker County, Texas, make the company liable?"

If the Texas & Pacific Railway Company permitted a person appointed receiver by a court having no jurisdiction over its property in this State, to take possession of that property and to operate it, then such person must be deemed to have been simply its agent, and is liable for injuries resulting while the railway was managed by him, in all cases in which it would be liable had he been made its agent in the ordinary manner.

The third question is, "Would the company be liable for such negligent act, if the receiver was appointed and discharged, and the property

restored to it by consent and collusion, as alleged by appellees, whether the court making the appointment had or had not the requisite jurisdiction? And if the court had jurisdiction, could that issue be made available in this suit?"

Appellees alleged, that the suit in the Circuit Court of the United States by which the receiver was appointed was collusively brought, and that the receiver was appointed by consent of all parties to it; and that while ostensibly acting as receiver the person so appointed was really but the agent of the railway company during the time he managed its property.

They further alleged, that before the discharge of Brown as receiver, the railway company bound itself by writing to assume and pay all liabilities incurred by him during the time he managed the company's property as receiver; and they further alleged, that during the time he operated the railway he made permanent improvements on the road to the value of $2,000,000, which were paid for out of current earnings, and that when restored to the company the enhanced value of the road resulting from improvements so made was $2,000,000.

If a court appointing a receiver has jurisdiction over the property to which the receivership relates, its orders and decrees will be binding on parties to the suit, and must be given effect so far as they affect the property; but it does not follow from this that the true relation of the person appointed to the railway company when property is placed in his possession may not be inquired into whenever that becomes necessary in litigation between the company and persons not parties to the suit in which the appointment is made.

If the court has jurisdiction, every reasonable presumption ought to be indulged that the relation of the receiver to the property and its owner is what that relation ordinarily is; for it ought not to be presumed, or even found to be true in the absence of cogent evidence, that a court has made itself the mere tool of apparently adverse litigants, or that it entertained a collusive suit.

A suit is said to be collusive when brought by seemingly adverse parties under secret agreement and co-operation, with view to have some legal question decided which is not involved in a real controversy between them; or when so brought with intent to defraud other persons, there being no real controversy between the parties nor purpose to secure some relief which, as between themselves, would not be conceded without suit.

The power of a court to appoint a receiver is based on the fact of real litigation between the parties, in which it becomes necessary in the opinion of the court to take possession of property to which the controversy in some manner relates, in order to preserve it, or if necessary to administer it for the benefit of all persons interested; he " is appointed upon a *principle of justice* for the benefit of all concerned. Every kind,

·of property of such nature that, if legal, it might be taken in execution, may, if equitable, be put into his possession. Hence the appointment has been said to be an equitable execution. He is virtually *a representative of the court and of all the parties in interest* in litigation when he is appointed. He is required to take possession of property as directed, be-·cause it is deemed *more for the interest of justice* that he should do so than that the property should be in the possession of either of the parties in the litigation. He is not appointed for the benefit of either of the parties, but of all concerned. Money or property in his hands is in custodia legis." Davis v. Gray, 16 Wall., 217.

If parties having no real controversy, and desiring no lawful relief which makes resort to a court necessary, institute a suit and have a re-·ceiver appointed to take possession of property for the purpose of defrauding other persons *or to embarrass them in assertion of right against one of the parties and its property,* no principle of justice sanctions the interposition of a court or the appointment of a receiver; and it would be a perversion of justice to hold otherwise than that a receiver appointed under such circumstances is the agent of the person or corporation whose property may thus collusively be placed in his possession.

The theory on which a receiver is held to be an officer of the court appointing him, and not the agent of the owner, whose property is placed in his possession, is that the property to be controlled is taken from the custody and management of its owner and made subject to the control of the court without his consent; *but when the defendant owner asks the court to do this, he, in effect, asks the court to make an appointment for him, and it is but just that a receiver so appointed should be held to be his agent.*

That a plaintiff collusively acts with a defendant for such a purpose only aggravates the case; for this enables the owner to impose upon the court, and such a plaintiff has no ground for complaint if the receiver be held the agent of the owner in reference to every act out of which, in the management of the property, obligations to other persons may arise. The statute of this State which declares, that " No receiver shall ever be appointed of any joint stock, incorporated company, or of any copartnership or private person on the petition of such joint stock, incorporated company, partnership, or person," is but a legislative declaration of the rule recognized by courts of equity. Robinson v. Hadley, 11 Bevan, 614; Liddle's Executor v. Starr, 19 N. J. Eq., 163; Marr v. Littlewood, 2 M. & C., 458.

Corporations ought not to be heard to say that they are either indisposed ·or incompetent to manage their own affairs, and that therefore some court should take charge of them through a receiver.

If the officers of a corporation misconduct its business, stockholders usually have power to remove them; and in cases in which they have not

the ability to protect themselves, courts of equity have power to control the acts of such officers, or even to remove them, but such misconduct does not authorize courts to appoint receivers, and through them to assume the management of a business or property.

The opinion in Metz v. Railway Company, 58 New York, 61, states the only ground on which it can be held that receivers are not agents of the persons or corporations whose property is placed in their possession by a court of competent jurisdiction; but it recognizes the fact that the rule applies only when the appointment is not made or brought about at the desire of the owner, and assumes that the rule applies only when the appointment is made against such person's will.

We do not wish, however, to be understood to hold that there must be active opposition or even open dissent on the part of the owner to the appointment of a receiver, in order to make operative the general rule; for if the application be justified by existing facts, good faith would not require opposition; but we do wish to be understood to hold, when a receiver is appointed by agreement between the parties to a suit, in order to accomplish a purpose not lawful in itself, that the receiver must be considered the agent of the owner of the property.

In a case in which by consent of parties a receiver was appointed, with power to receive and sue for all sums due the litigants, and the same to hold subject to the order of the court, it was held that the person so appointed could not be considered an officer of the court, and that he must be considered an agent of the parties, because the appointment was in effect the act of the parties. Keller v. Williams, 3 Rob , 321,

The Texas & Pacific Company, including its main and lateral roads, perhaps had more than one thousand miles of railway in Texas, the main line extending from its eastern to its western boundary; and it may be that it had, as is not unusual, a floating indebtedness, and would in current business incur obligations along its entire line, whether operated by the company or a receiver, in payment of which current earnings ought to have been applied.

Under such circumstances, if the real purposes of the receivership were not the lawful purposes shown by the pleadings in the Circuit Court, but were to place the property of the company in the hands of a receiver, subject to the control of a court sitting in another State, in order that the railway company might not be subject to suits in the ordinary course of judicial proceedings; that its creditors here should be thus embarrassed in enforcement of their rights, by having to resort to a court so far from the place where their causes of action arose; all for the purpose of enabling the parties to that suit, by agreement between them, to apply the earnings of the road to the betterment of the property belonging to the one, and to which the other looked as a security for debt, then the receiver-

ship ought to be deemed to have been collusive, and the receiver be held to have been simply the agent of the railway company.

Under such facts—which we do not assume to be true, but refer to for illustration—made known to the court, the receiver would not have been appointed, and the railway company ought not to be permitted to escape liability on the ground that through false and fraudulent pretenses, made by another, acting under a collusive agreement with it, the court had been induced to make an appointment that would not have been made had the real purpose been disclosed.

In Sage v. Railway Company, 17 Federal Reporter, 362, a distinguished circuit judge of the United States, on discovering the existence of such a state of facts as referred to, at once took steps to close a receivership; and in disposing of the questions presented, with such forceful language vindicated the abused jurisdiction of the court, and gave the rules applicable in such cases, as to challenge the admiration of every person having due regard for the pure administration of the law.

If the appointment of the receiver was obtained through collusion of the parties to the suit in which the appointment was made, it is unimportant whether the court would have had jurisdiction in a proper case to make the appointment; for in such case the company would be as fully responsible for negligence in the operation of its road through which injury resulted to a third person, as would it be if its road had been operated under the management of a superintendent appointed by its directory, and the facts which show such liability may be found in this cause.

The fifth question certified is: "In what, if any, state of the case as above set forth would appellees be precluded from disputing the validity of the appointment of the receiver, the deceased fireman having contracted with him in that capacity?"

In view of the entire case stated, it is not perceived that the fact that the person acting as receiver made the employment in that character could affect the right of appellees to show what his true relation to the company was.

If while he was in fact and in law the agent of the company, it permitted him to assume to act as receiver, and to control its property and employ persons to operate it, this would present simply the ordinary case of an agent contracting in relation to the principal's business entrusted to him, without disclosing who his principal is.

It was held in Railway Company v. Culberson, 72 Texas, 375, that one railway company operating the road of another under an authorized lease was the agent of the latter in so far as its duties to the public were concerned, but that as to the employes of the former no such agency and resulting liability existed. The decision in that case can have no application to the question certified.

The sixth question certified is: "In any state of case as above set forth, would the statute of limitations preclude a recovery?"

It has been held by the Supreme Court of the United States and by this court, that after the discharge of a receiver against whom suit has been brought, if there be facts to fix liability on a railway company's property for acts occurring during the receivership, it is proper to make the company a party and continue the litigation. Railway v. Cox, 145 U. S., 593; Railway v. Anderson, 149 U. S., 237; Brown, Receiver, v. Gay, 76 Texas, 444; Boggs v. Brown, Receiver, 82 Texas, 41; Railway v. Comstock, 83 Texas, 537.

In Railway Company v. Comstock it was held, that the action did not abate on the discharge of the receiver, and that the company having been made the defendant, the action should be treated as continuous from time it was instituted against the receiver; from which it followed that limitation could not be invoked unless the action was barred when brought against the receiver.

This action, however, could not have been maintained against the receiver, nor against the railway company after his discharge, if his relation to the company was really only that which a receiver ordinarily sustains to the person whose property is placed in his possession and management. Turner v. Cross and Eddy, Receivers, 83 Texas, 218.

If the action had been brought against Brown as agent of the railway company, it could not have been sustained, for the action, so treating him, ought to have been brought against his principal.

The case now stands as though no suit had been brought until the railway company was made the defendant, and from that standpoint the question of limitation must be considered.

The question of limitation is presented under the facts assumed as the basis for the preceding questions certified; and looking to them, it is evident that such facts operated to conceal the fact that cause of action existed against the company, and it could not well be held that such concealment was not fraudulent.

The rule in this State is, that the fraudulent concealment of a plaintiff's cause of action takes the case out of the bar of statutes of limitation. Munson v. Hallowell, 26 Texas, 475; Ripley v. Withee, 27 Texas, 17; Ransome v. Bearden, 50 Texas, 127; Calhoun v. Burton, 64 Texas, 515; Anding v. Perkins, 29 Texas, 348; Connoly v. Hammond, 58 Texas, 17; Brown v. Brown, 61 Texas, 45.

The limitation on this rule is, that a plaintiff can not excuse his delay in instituting suit on the ground of fraudulent concealment of his cause of action, if his failure to discover it is attributable to his own neglect; and whether such neglect existed in a given case must be determined from the facts of that case.

The fourth and seventh questions certified are: "If a collusive and fraudulent receivership was shown, or rather, if that was the proper deduction from the undisputed evidence, was the court required to submit the issue to the jury before a judgment could be entered on a general verdict finding negligence?"

"If appellant could be held liable for the death loss in question on the ground of a collusive and void receivership as alleged, upon a verdict finding that issue in favor of appellees, should the judgment be reversed for fundamental error, when the pleading and proof raised the issue, and no error is assigned for failure to submit it to the jury?"

These may be considered together. It has been held, in a long line of decisions, that a charge correct so far as it applies to the facts, but omitting to state the law applicable to an issue raised by them, furnishes no ground for reversal, unless proper instruction relating to the matter omitted be asked and refused. Robinson v. Varnel, 16 Texas, 387; O'Connell v. The State, 18 Texas, 363; Peeler v. Guilkey, 27 Texas, 358; Ford v. McBryde, 45 Texas, 501; Davis v. Roosvelt, 53 Texas, 316; Beazley v. Denson, 40 Texas, 434; Cockrill v. Cox, 65 Texas, 675; Railway v. Arispe, 81 Texas, 519.

Whatever exceptions there may be to this rule, none of them embrace a case in which the undisputed evidence establishes the fact to which the omission relates.

The eighth question certified is: "As deceased was killed since the act of Congress of March 3, 1887, relating to Federal receiverships, what effect, if any, did it have on the issues involved?"

As this is now an action against the railway company, that act has no bearing on any issues raised by the pleadings; but were it an action that could have been maintained against the receiver, or were it against him, all the issues made in the pleadings on which that act could have any bearing were settled by the Sureme Court of the United States in the case of Railway Company v. Johnson, 14 Supreme Court Reporter, 250, and in other cases.

Delivered April 30, 1894.