FARMERS' LOAN & TRUST CO. v. NORTHERN PAC. R. CO. et al.

(Circuit Court, D. Washington, N. D.    September 2, 1895.)

1. RAILROAD RECEIVERS—APPOINTMENT AND REMOVAL—COMITY BETWEEN FEDERAL COURTS—PRIMARY AND ANCILLARY JURISDICTION.

The circuit court for the Eastern district of Wisconsin appointed receivers of the property of the Northern Pacific Railroad Company, pursuant to a prayer of a creditors' bill which showed that the company was operating certain leased lines within the territorial jurisdiction of that court. Immediately afterwards similar bills were filed in the circuit courts of the various judicial districts traversed by the Northern Pacific Railroad, including the circuit court for the district of Washington; and all these courts, under the rule of comity, appointed the same persons as receivers. A like bill was filed and like action was taken in the circuit court for the Southern district of New York, where the home office of the company was located. The receivers operated the leased lines in Wisconsin for only about a month, when the lease was canceled by the lessor for nonpayment of rent, whereupon, by order of the court, those lines were surrendered by the receivers to their owners. Shortly afterwards another bill was filed in the circuit court for the Eastern district of Wisconsin, praying a foreclosure of various mortgages upon the property of the Northern Pacific Railroad, and in this suit the same persons were appointed as receivers. Like foreclosure suits were filed in all the other circuit courts, and the same receivers were appointed under them. The receivers operated the Northern Pacific Railroad for about two years, and under a decree of the circuit court for the Eastern district of Wisconsin they issued receivers' certificates to a large amount. Thereafter the railroad company made application to the circuit court for the district of Washington for the removal of the receivers, alleging various acts of mismanagement and fraud, and showing that, at the time of the application, no property, either real or personal, belonging to the Northern Pacific Railroad Company, was held by the receivers in the Eastern district of Wisconsin. *Held*, that, in view of this latter fact, the circuit court for the district of Washington was not bound to regard the circuit court for the Eastern district of Wisconsin as the court of primary jurisdiction; that the rule of comity did not apply; and that the former court would therefore assume jurisdiction to pass upon the application upon its merits, and in the exercise of an independent judgment.

2. SAME.

The fact that the Northern Pacific Railroad Company, prior to the receivership, owned shares of stock in various other corporations, which shares were transferred to the receivers, and still stood in their names, was without any bearing on the right of the circuit court for the district of Washington to pass upon the application; for those shares must be presumed to have been held by the company at its home office in New York, and to have been transferred to the receivers under the authority of the circuit court of that district. They were consequently held under the control and direction of that court and were not in the possession or custody of the court for the Eastern district of Wisconsin.

3. SAME—RECEIVERS' CERTIFICATES.

The fact that the receivers' certificates primarily authorized by the circuit court for the Eastern district of Wisconsin were outstanding, in the hands of innocent holders, is no reason why the circuit court for the district of Washington should recognize the former court as the court of primary jurisdiction; for receivers' certificates which have been authorized by the several courts in which the property in receivership is situated are valid liens upon that property. If any have not been so authorized, the action of the court in proceedings to remove the receivers cannot affect the question of their validity. The receivers are lawful appointees of all the courts in the jurisdictions in which the property of the railroad company is situated, and none of their acts within the scope of

their authority, and under the.orders of the courts which have control over said property, are invalid.

4. SAME.

It was no obstacle to the proposed action of the circuit court for the district of Washington that it was not the first court to follow the circuit court for the Eastern district of Wisconsin in appointing the receivers, and that such appointment had been ·previously made by other circuit courts within whose territorial jurisdiction part of the Northern Pacific Railroad actually lay; it not appearing that any of such courts had assumed primary jurisdiction, or intended to do so.

5. SAME.

Actual possession of property of an insolvent railroad company can be acquired by the court which first appoints receivers only to the extent of the property lying within its territorial jurisdiction. The rights accorded to such receivers by other courts are based entirely upon comity. Such comity rests upon the fact that another court is in the actual possession of a portion of property which cannot well be segregated, and which the best interests of all concerned require to be managed as a single system. Per Gilbert, Circuit Judge.

6. SAME.

A court within whose territorial jurisdiction no part of a railroad lies cannot acquire jurisdiction in rem over the same by the appointment of receivers who take into their possession only such assets of the railroad company as money, bonds, and other securities, or even railroad materials, supplies, and cars found on other roads. Custody of things movable, and not indispensable to the operation of the road, will not draw jurisdiction in rem over a railroad situated beyond the boundaries of the court's territorial jurisdiction. Per Hanford, District Judge.

7. EVIDENCE — JUDICIAL NOTICE — LOCATION OF RAILROAD CONSTITUTING NATIONAL HIGHWAY.

The Northern Pacific Railroad being a national highway, provided for by national laws, its location as such is a matter of which the court will take judicial notice; and hence it is not bound to assume a location contrary to the fact, merely because, in another suit between the same parties, in a different court, a decree has been entered which is based upon untrue allegations in respect to such location, and an admission thereof in the answer. Per Hanford, District Judge.

This was an application by the Northern Pacific Railroad Company for the removal of the receivers of its property, on the ground of mismanagement and fraud.

J. N. Dolph, John B. Allen, and Mr. Flanders, for complainant.

Harold Preston, Wilbur F. Sanders, and Silas W. Petit, for defendant.

John C. Spooner, Charles W. Bunn, D. J. Crowley, and John H. Mitchell, for the receivers.

Before GILBERT, Circuit Judge, and HANFORD, District Judge.

GILBERT, Circuit Judge. On August 15, 1893, a bill in equity was filed against the Northern Pacific Railroad Company, in the circuit court of the United States for the Eastern district of Washington, by P. B. Winston, the Farmers' Loan & Trust Company, and William C. Sheldon & Co. · The bill described the railroad of the Northern Pacific Company, and the various tributary and connected branch lines operated by it as a part of its system, and set forth the mortgages upon the said road, showing that the funded or secured debt of the company amounted to over $152,000,000, upon which the annual interest and sinking·fund charges aggregated over $9,000,000,

in addition to more than $900,000 guarantied annual interest upon contingent liabilities on guaranties of bonds upon the branch lines to the amount of over $15,000,000, and alleged that the gross earnings of the railroad company were and continued to be insufficient to pay operating expenses and fixed charges, and that the company was insolvent. It set forth the fact that the floating debt of said company amounted to more than $11,000,000, and that its available assets had been hypothecated to secure loans, and by reason of the decline in value of such collaterals the same would be sold at such a low price as to leave large deficiencies against the company, which would result in numerous actions at law to recover therefor. It further showed that during the fall of 1894, from September to December, large payments would fall due from said railroad company for interest on its several mortgages, and for interest on branch lines, etc., and that the company would be unable to meet the same. Winston was alleged to be an unsecured creditor of the company, and likewise a stockholder. Sheldon & Co. were alleged to be creditors of the railroad company to the extent of $150,000, for which they were insufficiently secured by collaterals. The bill alleged that the lines owned and operated by the railroad company were in and were subject to the jurisdiction of 10 different states, but that they formed one system, and made one line, and that this fact constituted one of its main ingredients of value, and that its severance would result in ruinous sacrifice to every interest in the property, and that unless the court would deal with the property as a single trust fund, and take it into custody for the protection of those interested therein, individual creditors would assert their remedies in different courts, and that a race of diligence would result, judgments and priorities would be attempted, etc., and thereby the company would be prevented from the discharge of its duties as a public carrier, and a vast and unnecessary multiplicity of suits would ensue. The bill prayed for the protection and preservation of the property, the marshaling of the company's assets, the ascertainment of the liens and priorities existing, and for the appointment of receivers of the entire system of railroad and all the property of the company. The Northern Pacific Railroad Company answered the bill on the day it was filed, admitting the allegations thereof to be true, and consented to the appointment of one or more receivers as prayed therein. On the same day an order was entered in said court appointing the present receivers. Thereafter the same bill and answer were filed in the circuit courts of the United States for the various districts in which said railroad is situate, to wit, in the Western district of Wisconsin, the district of Minnesota, the district of North Dakota, the district of Montana, the district of Idaho, the district of Washington, and the district of Oregon, and in the Southern district of New York, in which is the home office of said corporation; and between the 15th day of August, 1893, and the 17th day of the same month, orders were made in all these courts appointing the same receivers. At the time of filing said bill in the Eastern district of Wisconsin, the Northern Pacific Railroad Company was in the possession of and was operating the Wisconsin Central lines, the larger portion

of which were in said district, under a lease dated April 1, 1890, and running for a term of 99 years. Immediately upon their appointment, the receivers entered into possession of the said Wisconsin Central lines, and operated the same under the lease for more than a month. On September 26, 1893, the lease having been canceled by the lessor for nonpayment of rent, the circuit court for the Eastern district of Wisconsin ordered the receivers to turn back the said lines to the lessor. On the 18th day of October, 1893, the Farmers' Loan & Trust Company filed in the circuit court for the Eastern district of Wisconsin its bill to foreclose the second, third, and the consolidated general mortgages upon the road, alleging that, since the filing of the creditors' bill, defaults had occurred in the payment of interest on said mortgages, and praying for a decree of foreclosure. Winston, Sheldon & Co., and the receivers were made parties defendant. On the day the foreclosure bill was filed the Northern Pacific Company entered its general appearance, and on the same day the court appointed in that suit the receivers formerly appointed in the creditors' suit. Thereafter the foreclosure bill was filed, and similar orders were made in all the circuit courts of the districts before mentioned. The receivers so appointed have since remained in the possession and management of the road and the property of the Northern Pacific Railroad Company, under the direction of the circuit court for the Eastern district of Wisconsin, and under the authority of said court have issued an aggregate of $5,000,000 of receivers' certificates, which have been sold and are now outstanding. They have also, under the orders of said court, expended money in payment of interest on the first mortgage, have sold railroad lands to various purchasers, have paid indebtedness of said company, and have made leases and traffic contracts with certain branch lines and other carriers. They have also expended money in improvements and in the purchase of railroad material, rolling stock, and supplies, etc.

On the ——— day of August, 1895, the Northern Pacific Railroad Company filed in this court the affidavit of Brayton Ives, its president, stating, in substance: That no part of the railroad or land grant of the Northern Pacific Railroad Company was or ever has been in the Eastern district of Wisconsin, and that at the time of the appointment of the receivers by that court there was no property of said company within the jurisdiction of said court, and that none of the property covered by the mortgages which were sought to be foreclosed in said suit was situate within the said district. That, by the order of this court by which said receivers were appointed of the property in the district of Washington, said receivers were ordered and directed to pay, out of the money which should come into their hands from the operation of said road, current expenses, amounts due for interchange of traffic supplies and materials used, wages, and rentals of rolling stock, and, with the sanction of this court, such amounts as might be necessary for protecting the property of said corporation from sale under mortgage, etc.; and they were also directed to hold the money of said company not so used by them until authorized to dispose of the

same under the order of this court.   That the receivers have not complied with the terms of said order, but have deposited the moneys received by them in this district in banks other than those authorized by this court, and, without the sanction of this court, have applied the same to the payment of debts alleged to exist against said company, other than those contemplated by said order, and that they have not filed with or submitted to this court any account of the disposition made by them of any of the property which came into their possession, nor any statement of their receipts and disbursements, nor any reports to this court as, by the order of their appointment, they were directed to make; that they have misapplied divers large sums of money received by them from the sales of lands and other property of the company, and from the operation of said road, by appropriating the same to the payment of alleged debts of said railroad company which were not entitled to be paid in preference to the interest and principal due under the mortgages.   That said railroad company has a claim against Henry Villard for $545,433.42, arising out of a sale made by him, when chairman of the board of directors of said company, of the capital stock of the Northern Pacific & Manitoba Railway Company, in violation of his duty as director, and in fraud of said company; and another claim against said Henry Villard for $224,800, arising out of a sale by him to said railroad company of the capital stock of the Rocky Fork & Cooke City Railroad Company, made in violation of his duty as a director, and in fraud of his company; and another claim against Henry Villard, Charles L. Colby, and Colgate Hoyt, who were directors of said Northern Pacific Railroad Company, for the sum of $2,600,000, arising out of the lease of the railroad of the Wisconsin Central Company, the Wisconsin Central Railroad Company, and Chicago & Northern Pacific Railroad Company, in violation of their duties as directors, and in fraud of said Northern Pacific Railroad Company.   The affidavit further alleges, in substance:   That the said bills so filed in the circuit court of the United States for the Eastern district of Wisconsin were procured to be filed by said Henry Villard, collusively and for the purpose of controlling the suits and naming the receivers to be appointed therein; that he procured his personal counsel to prepare said creditors' bill; and that the said receivers were decided upon as the result of a conference between Thomas F. Oakes, Henry Villard, Charles L. Colby, Colgate Hoyt, and Villard's personal counsel, William Nelson Cromwell, each in his own interest, and Rosewell G. Rolston, as director of the Northern Pacific Railroad Company and president of the Farmers' Loan & Trust Company, for the purpose of protecting the interests of those participating in the transactions and liable to the claims above mentioned.   That the receivers selected for their counsel, and intrusted the direction of the legal business of said railroad company to, the said William Nelson Cromwell, who had been counsel for the said Henry Villard in making the sale of said capital stock of the Northern Pacific & Manitoba Railway Company and the Rocky Fork & Cooke City Railroad Company to said North-

ern Pacific Railroad Company, and who continues to act as counsel for said Villard. That the said receivers have been directed by the circuit court of the United States for the Eastern district of Wisconsin to sue the said Henry Villard to recover the sums fraudulently acquired by him from the Northern Pacific Railroad Company, and to sue any of the former directors of said company to recover all sums of money improperly or illegally received by them, yet, in violation of their duty in the premises, they have taken no proceedings whatever to carry out said order. That, notwithstanding the existence of said claims, the receivers have paid to said Henry Villard $480,000, with interest thereon, in payment of two notes of said Northern Pacific Railroad Company held by said Henry Villard, which debt should have been applied by the receivers in reduction of the debt of said Villard to the company. That the receivers have sold large tracts of land of said company within the state of Washington, and have made no report thereof to this court, and have not accounted to this court for the disposition of the proceeds thereof. That they have entered into divers contracts relating to the custody, management, and disposition of the property of said company within the jurisdiction of this court, without the knowledge of this court or its authority.

Upon said affidavit the receivers were required to show cause before this court why the order entered on the 17th day of October, 1893, appointing them receivers of the Northern Pacific Railroad Company within this district, should not be vacated and set aside. The Farmers' Loan & Trust Company and the receivers now object to the jurisdiction of this court to entertain the motion, and they urge, in support of their objection, that the circuit court of the United States for the Eastern district of Wisconsin is the court of primary jurisdiction,—the court which first appointed receivers and thereby took possession of the property of the Northern Pacific Railroad Company,—and that the well-settled rule of comity requires all other courts within whose jurisdiction the property of said corporation is situated to refer to that court all questions concerning the general management of the property, the custody and preservation thereof, and the appointment and discharge of the receivers; that at the time of filing of both the creditors' bill and the bill to foreclose the mortgages there was situate within the jurisdiction of said court for the Eastern district of Wisconsin personal property of said corporation, consisting of rolling stock, rails, materials, money, and leased railroad lines which it was operating in connection with its own lines; that the appearance of the Northern Pacific Company in answer to said bills gave to that court the jurisdiction to hear and determine said suits, and that the existence of said personal property within said district at that time gave to that court jurisdiction to take the same into its possession by said receivers, and that, notwithstanding the fact that at the present time there may be no property of the corporation within said district, or in the possession of said court by its receivers, yet, the jurisdiction having once attached by reason of the facts existing at the time of the commencement of the suits, it will be and

must remain unquestioned until the final determination of all matters in litigation; and that for this court to now say that the court of the Eastern district of Wisconsin is not the court of primary jurisdiction over the property of the said railroad company in receivership is to collaterally attack the validity of a judgment of that court.

We find in the case no question of an attack upon the jurisdiction of the circuit court for the Eastern district of Wisconsin. It must be conceded that that court had jurisdiction of the bills that were filed, and had jurisdiction to appoint receivers to take into its possession the property of the railroad company that was within its territory, and to remove the same. The question for consideration here is not one of the jurisdiction of that court in the suits pending before it, but it is whether or not that court is to-day the court of primary jurisdiction for the management and control of the property of the Northern Pacific Railroad Company in the hands of receivers, and whether the rule of comity, as settled by the decisions of the courts, requires this court to decline jurisdiction of the motion until the matters here in issue shall have been adjudicated by another tribunal. All of the bills that were filed in the various jurisdictions in which the property of the Northern Pacific Railroad Company is situated were original bills. It is true that each bill filed after the initiation of proceedings in the Eastern district of Wisconsin recited and referred to those proceedings as the basis of action in the other courts; and it is also true that the other courts, in following the rule of comity, appointed in their own districts, without question, the receivers so named by the first court. The actual possession of the property of the insolvent corporation by the first court, through its receivers, however, could extend no further than the territorial limits of that court's jurisdiction. The rights the receivers are accorded in courts whose jurisdiction is exterior to that of initial proceeding have their basis in comity. Such comity rests upon the fact that another court is in the actual possession of a portion of property which cannot well be segregated, and which the best interests of all concerned require to be managed as a single system. Here, however, it is shown that at the time of filing this application to remove the receivers there is no part of the railroad line of the Northern Pacific Company within the jurisdiction of the court that first appointed them, and that there is in that district no personal property held in receivership. All the property that remains to be disposed of is in other jurisdictions. It follows from this state of facts that that court is powerless to make an order which affects in any way the management or possession of any of the property of the corporation. No foreclosure sale of said mortgages can be had, no possession to a purchaser can be given, until the courts which have the actual possession of said road shall consent thereto. In our judgment, the rule of comity which has been invoked in opposition to the motion does not apply to such a case as this. The foundation of the rule is the recognition of a right that exists in another jurisdiction. It is predicated upon the fact that another court has first taken and retained the possession

of property. Its reason consists in the fact that the court of initiatory proceeding has in its possession, and must necessarily administer, a portion of property which a wise policy declares must not be disintegrated. That reason does not exist in this case. Not only does it not exist, but many considerations urge us to believe that a wiser, more satisfactory management of a railroad may be obtained by a court which has jurisdiction over at least some of the territory wherein the same is situated, or in which the home office of the company is located.

Numerous authorities are cited by counsel both on behalf of the motion and in opposition thereto, but no case is found which is direct authority either for or against the conclusion which we have reached. In a well-considered case in the supreme court of Texas (Railway Co. v. Gay, 26 S. W. 599) it was held that the United States circuit court for a district in Lousiana has no jurisdiction to appoint a receiver, and through him to take possession and control of a railroad, no part of which was within that state. Said the court:

"No case can arise in which a court will have power to appoint a receiver unless there be property of which the court may take possession through its receiver; and, if the property be immovable (or movable, but so connected with the immovable as are cars or other like property necessary to and used in operating a railway), then the suit in which a receiver to take possession of them may be appointed is necessarily one local in character, for in such case the court operates directly upon the thing. Such a proceeding is not one strictly in rem, but such is its nature; and, under general rules everywhere recognized, such proceedings can be had only where the thing to be taken into possession is within the territory within which the court has power to act."

It was said by the court in Young v. Railroad Co., 2 Woods, 618, Fed. Cas. No. 18,166, that:

"If there are any adjudged cases which would authorize this court to interfere with the possession of a receiver appointed by another court having jurisdiction, and who is in actual possession of the property, they have never fallen under my observation."

But it is made clear from a consideration of that case that, in declining to interfere with a receiver who was "in actual possession of the property," the court had in mind the fact that in that case the court of initial proceeding had within its jurisdiction and in the custody of its receiver a portion of the road and of the property of the railroad company; and it is evident that such actual possession was considered a necessary feature of the receivership of another court, which, in the opinion of that court, could not be interfered with.

The fact that certificates of stock in other corporations which were held by the Northern Pacific Railroad Company have since the receivership been transferred to the receivers, and stand in their names, has no bearing upon the question under consideration. The situs of such property is not changed by the fact of such transfer. Shares of stock held by the Northern Pacific Railroad Company must be presumed to have been held by it at its home office in the city of New York. If those shares have been transferred to the

receivers, such transfer has been made at the home office, and must have been made under the authority of the circuit court for that district; and, if they are held by the receivers, they are held under the direction and control of that court, and they are not in the possession or under the custody of the court for the Eastern district of Wisconsin.

It is strongly urged against the assumption of jurisdiction by this court to entertain the motion that during the receivership receivers' certificates have been issued to a large amount, and that the same are now held by innocent purchasers, and that to deny the primary jurisdiction of the court for the Eastern district of Wisconsin over the receivership is to hold that those certificates were unlawfully issued. We find no ground for such contention. If the receivers' certificates have been authorized by the courts of the various districts in which the property in receivership is situated, they are valid liens upon that property, irrespective of the question whether the court for the Eastern district of Wisconsin had jurisdiction to order their issuance. If they have not been so authorized, it is not perceived how the action of this court can in any way affect the question of their validity. It must be conceded, in any view of the case, that the receivers are at the present time, and have been since their appointment, the lawful appointees of all the courts in the jurisdiction of which the property of the Northern Pacific Railroad Company is situated. They are the receivers of the railroad, and none of their acts, done within the scope of their authority, and under the orders of the courts which have control over said property, are invalid.

It is further contended that, if the circuit court for the Eastern district of Wisconsin is held not to be the court of primary jurisdiction over the property in receivership, such primary jurisdiction falls either to the circuit court for the Western district of Wisconsin, in whose jurisdiction a portion of the company's railroad lies, and in which receivers were appointed before they were appointed in this court, or to the circuit court for the Southern district of New York, in which is located the home office of the corporation and a large portion of its personal property. It is sufficient to say, in answer to this, that it is not shown that either of said courts has assumed such jurisdiction, or that they will do so. We see, therefore, no ground upon which this court should decline to hear the motion which is presented. The objection to the jurisdiction will be overruled.

HANFORD, District Judge (concurring). The argument against entertaining the present application may all be arranged under two heads: First. As to the foreclosure of the mortgages on the Northern Pacific Railroad, and whatever is incidental thereto, including the receivership, the United States circuit court for the Eastern district of Wisconsin is the court of primary jurisdiction, and, by the rule of comity in such matters, this court, instead of taking original cognizance of a motion to change the personnel of the receivership, should send the parties, to initiate proceedings for such

change, to the court of primary jurisdiction. Second. This application is a collateral attack upon a final judgment of a court of co-ordinate jurisdiction which had complete jurisdiction of the parties and of the subject-matter. Other considerations have been urged upon our attention, such as the vast amount of the aggregate loss by depreciation of the Northern Pacific securities which may result from our decision; but the distinctively legal grounds for rejecting the application of the defendant company for a change of receivership are covered by the foregoing propositions. I find that I can express my individual views more concisely by discussing both propositions together, under the general issue as to the jurisdiction and duty of this court.

This court is not called upon, by the application under consideration, to vacate or modify any order or decree made by the circuit court for the Eastern district of Wisconsin. We are asked simply to remove from office receivers under appointment of this court, and to appoint others in their places, to serve as the receivers of this court, and to exercise such power as it is within the jurisdiction of this court to confer. The only direct effect of granting the application now made by the defendant will be to strip from the receivers now acting such power as they have become vested with by virtue of the orders of this court, and to confer the same powers upon other individuals. Incidentally the effect may be, and probably will be, far-reaching, for such action will be a recognition by this court of its duty to exercise independently, within the territorial boundaries of its jurisdiction, such powers as have been by the laws of the land conferred upon it, and such as parties having rights to be protected may see fit to invoke, and an assertion that the assumption of paramount authority over the railroad, and business transactions in the operation thereof, by a court located at a distance from the situs of its operations, is contrary to sound principles of government, and unjustifiable. But consequences do not change facts. The fact of the matter is, this application is a direct proceeding, relating entirely to matters as to which all the parties to the record must stand committed as having, from the inception of the case, conceded that this court has jurisdiction. The attack now being made is not collateral. It is not directed against a final judgment. The second proposition above stated is based upon false premises, and is untenable for that reason; but if it were not so, and this proceeding could be regarded as being purely an attack upon an adjudication of the circuit court for the Eastern district of Wisconsin, finally determinative of the particular questions, still the defendant has the right to make such an attack, and this court is bound to entertain it, because want of jurisdiction, apparent upon the face of the record, is the ground upon which the attack is made, and on such ground the right of the parties to litigate is not concluded by any decree of the court whose jurisdiction is questioned.

It has been assumed throughout the argument, and I am therefore justified in assuming, that the jurisdiction of the court at Milwaukee over the entire subject-matter of the receivership of the

Northern Pacific Railroad has never been challenged, nor put to the test of an argument there by adverse parties, as it has been upon the argument of this motion. I feel greater freedom in discussing the questions than I should if the able judges of the Seventh circuit, or any one of them, had ever been called upon to define the jurisdiction of that court with reference to this receivership.

In its inception, the present administration of the Northern Pacific Railroad Company's estate and business, through receivers acting under appointment from courts of chancery, was a proceeding in rem. The creditors' bill filed by Winston, Sheldon & Co., and the Farmers' Loan & Trust Company, the answer of the Northern Pacific Railroad Company, and all the papers filed in the original case, and the first order of the court appointing Messrs. Payne, Oakes, and Rouse to be receivers, show that the primary object and purpose of the suit was to place the railroad, its equipments, lands, and all of its assets in the actual and legal custody of the court, and to have the court assume control, and, under such control, continue its operations as an active and going concern. The pleadings raised no issue between the plaintiffs and the defendant. The bill prayed for no relief which the defendant opposed. All the parties had a common object, and that was to shelter the property from judicial writs and process which they anticipated would be sued out by creditors in the different courts having jurisdiction within the numerous counties in which parts of the road and its property are situated. The only adverse parties, in the sense of persons having interests, rights, or claims liable to be damaged, invaded, or prejudiced by any proceedings, order, or decree in the case, were creditors of the defendant, its employés, and parties having contract relations with it, who are not named in the record, and not made parties to the suit otherwise than as in any proceeding purely in rem, in which any person having an interest in property taken into custody may come in and contest for his rights. In such a proceeding, actual manual possession of the res is essential to the jurisdiction. This proposition is elementary, and as undisputable as the proposition that a man cannot grasp things which are beyond his reach. Manifestly, in full recognition of this essential, the parties attempted to create jurisdiction by averring in the bill and admitting in the answer as a fact that part of the Northern Pacific Railroad is situated within the Eastern district of the state of Wisconsin; and we are now told that, this fact having been so averred, admitted, and established by the decree of the court based thereon, it must, for all purposes of litigation between these parties, and in all jurisdictions, be taken as true, although in fact untrue. In refutation of this claim, I deem it proper to say that the Northern Pacific Railroad is a national highway, provided for by national laws, and its location is as much within the judicial knowledge of the court as any other geographical fact. To such facts, which are not dependent for evidence of their existence upon the testimony of witnesses or the preservation of documents, the law of estoppel cannot be properly applied. It would certainly be an absurdity for any court in dealing with im-

portant rights to be controlled by a record in which the parties alleged and admitted, and the court found as a fact, the state of Oregon to be situated within the corporate limits of the city of Tacoma. The facts shown by the record and within the knowledge of the court limit the power of the court at Milwaukee, in the granting of relief prayed for by the original creditors' bill of Winston and others, to the appointment of receivers for the purpose of taking into manual possession and under control such assets of the defendant corporation as were movable and detached from the railroad. The railroad and real estate of the defendant, being immovable, could not be brought within the jurisdiction of that court. Neither could jurisdiction over the same be acquired by taking possession of such assets as money, bonds, and other securities, or even railroad materials or supplies, or railroad cars while migrating over other lines. Custody of things movable, and not indispensable to the operation of the railroad, will not draw jurisdiction in rem over a railroad situated beyond the jurisdiction, any more than it will bring the road itself within the boundaries of jurisdiction. The rule which recognizes as the court of primary jurisdiction the one which is first in point of time in acquiring custody of one part of the line of railroad extending into more than one judicial district, and requires other courts to defer to the court of primary jurisdiction as the court of paramount authority in managing the operations of a railroad so situated, arises from necessity, and is a rule of reason. An accurate statement of the rule itself excludes the idea that any court can be a court of primary jurisdiction, or have supremacy, in the control of a railroad situated outside of the boundaries of its jurisdiction. Necessity, which is the mother of the rule, is absent in such a case. The liabilities, litigation, and contentions arising from the practical operation of a railroad, affecting the employés and patrons of the road, and the community served by it, should, according to American ideas of local self-government, be adjudicated in a forum having jurisdiction at the place where the transactions occur and the subject-matter is situated. Judicial process, to be of any use in protecting an estate and the interests of its owners, must be potential at the place where the estate is. These considerations require each court of the United States to exercise within its district the powers conferred upon it by law for the benefit of the public, and of each individual having rights to be protected, untrammeled, and not controlled except by law and by tribunals having appellate jurisdiction to revise its judgments. To defer to the judgment of a court of coordinate jurisdiction in the management of a railroad is justifiable upon the ground that without a head to control it is impossible to operate a continuous line of railroad, and it would be an unseemly spectacle for courts to seize the different ends of a line and engage in a tug of war for mastery over it, and there is no other reason for what is termed the "rule of comity" in such matters. When the reason of the rule is considered, it must be admitted, as a plain proposition, that a railroad extending through different judicial districts, upon going into the hands of receivers, must be controlled

by the court of one or the other of the districts into which it extends, and a distant court, whose process is without virtue where a railroad is situated, and its business transactions take place, is incompetent to manage its affairs. The utter want of power to protect this railroad, or conserve the interests of the people whose capital is invested therein, is shown in a practical way by the fact that when the property was menaced by the so-called industrial army, and afterwards by sympathizers with the American Railway Union strike of 1894, the court sitting at Milwaukee was not called upon to vindicate its authority, but the courts having jurisdiction within the territory traversed by the road were required to exert their power, and did so in numerous instances. As a further test, let it be supposed that the courts of the Eighth and Ninth circuits should assume full control of all of the Northern Pacific property within the territory over which their jurisdiction extends, independent of the proceedings pending in the courts of the Seventh circuit, and then inquire what would be the consequences to the railroad or its business? Would there be a collision of the forces emanating from the different courts? Would any part of the property necessary to the operation of the railroad in its entirety be left unprotected? Would the courts acting thus inharmoniously present the unseemly spectacle of grasping the ends of a single line and engaging in a tug of war? To answer these questions correctly is but to assert that necessity for the joint and harmonious action of the circuit court for the Eastern district of Wisconsin with the courts of the Eighth and Ninth circuits, in order to maintain the integrity and autonomy of the Northern Pacific Railroad, is not necessary.

The fact that the Northern Pacific Railroad Company owns a stub line extending from West Superior to Ashland, in the Western district of Wisconsin, is unimportant, for the reason that the circuit court for the Western district of Wisconsin has never assumed supremacy as a court of primary jurisdiction in the administration of Northern Pacific Railroad affairs, and, so far as the record before us discloses, the proceedings in that court were not in fact commenced anterior to the proceedings in this court. The only fact upon which a reasonable argument in favor of the jurisdiction of the circuit court for the Eastern district of Wisconsin to entertain the creditors' bill can be predicated is this, viz. that, at the time of filing said bill the Northern Pacific Railroad Company was engaged in operating other lines of railroad, extending into the Eastern district of Wisconsin, under a lease from the Wisconsin Central Railroad Company; but this fact is not sufficient to support the jurisdiction. The argument that, because of its control of lines of railroad other than its own line, it was necessary to have its entire property, including leased railways which were being operated as one great railway system, under the management of the same receivers, is fully answered by the fact that, within six weeks from the date of the first appointment of these receivers, it was found to be not necessary for the Northern Pacific receivers to continue in control of the leased lines, and sufficient

reasons were shown for discontinuing their control, and they were actually required, by an order of the circuit court for the Eastern district of Wisconsin, to surrender said leased lines.

The mortgage foreclosure bill filed by the Farmers' Loan & Trust Company in October, 1893, after there had been a default in the payment of interest on bonds secured by the mortgages for which said company is the trustee, has been styled in the argument a "dependent bill," the meaning of which is that the foreclosure suit, being commenced after the property had gone into the hands of the receivers, must necessarily hang or depend upon the case in which the receivers were already proceeding in the administration of the defendant's estate; and it is said that the complainant was compelled to initiate the foreclosure suit in the circuit court for the Eastern district of Wisconsin because the court had acquired complete jurisdiction over the corpus of the defendant corporation by the proceedings in the creditors' suit. It is because of this argument that I have examined closely the grounds for jurisdiction shown by the record in the creditors' suit, and, for the reasons stated, it is my conclusion that the record shows affirmatively want of jurisdiction in that court, because I must regard that suit as a proceeding purely in rem in a court which did not have jurisdiction of the res. The foreclosure suit, viewed as a dependent upon the creditors' bill, adds nothing to the jurisdiction of the court at Milwaukee, for it must certainly fall whenever the original case upon which it is hung falls.

It has been argued that a suit to foreclose a mortgage upon a railroad or other real estate is a transitory action, and the court at Milwaukee acquired jurisdiction of this case by the voluntary appearance of the mortgagor and mortgagee. It is true that a mortgage may be foreclosed by a suit in personam in a court having jurisdiction of the parties, and such a court may, by coercive measures, compel the mortgagor to transfer the title to mortgaged premises situated beyond its jurisdiction. A mortgage may also be foreclosed in a court having no jurisdiction of the person of the mortgagor, by a proceeding in rem, if it has jurisdiction of the res. The proceedings may be of a double nature; that is to say, both in personam and in rem. This argues nothing, for the elementary principle that a purely personal judgment is not valid against a person who has not been by due process or his voluntary appearance brought within the jurisdiction of the court which pronounced it remains in full vigor. And proceedings in rem are impossible in a court having no jurisdiction of the res. Now, as the custody, control, and operation of a railroad through receivers must be pursuant to proceedings in rem, jurisdiction thereof cannot be acquired by a distant court, although it may have jurisdiction to foreclose the mortgage by a suit in personam.

Many authorities have been cited, but none to controvert the foregoing proposition. In the case of Muller v. Dows, 94 U. S. 444, the supreme court affirmed the validity of a decree foreclosing a mortgage upon a railroad situated partly in Iowa and partly in Missouri by the United States circuit court for the district of Iowa.

But in that case, although the court rendered a decree foreclosing the equity of redemption, and ordered a sale of the railroad as an entirety, it did not assume to transfer title to that part of the railroad situated in Missouri, but compelled the owner to convey the title; and it was the act of the mortgagor in conveying the title which the supreme court sustained. In commenting upon the law of the case, Mr. Justice Strong uses the following significant language:

"It is here undoubtedly a recognized doctrine that a court of equity, sitting in a state and having jurisdiction of the person, may decree a conveyance by him of land in another state, and may enforce the decree by process against the defendant. True, it cannot send its process into that other state, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title. And there seems to be no reason why it cannot, in a proper case, effect the transfer by the agency of the trustees when they are complainants."

The case in hand is one in which creditors and stockholders first commenced the suit for the avowed purpose of placing the operation of the railroad under control of a court of chancery, and in which, afterwards, the trustee for the mortgage bondholders has commenced a second suit for the purpose of foreclosing the mortgage; but in view of the time which has elapsed since the foreclosure suit has been pending, and the manner in which the case has been suffered to slumber, the court is justified in saying that it has not been intended to really foreclose the mortgage in the usual manner of foreclosing mortgages. It is not the wish or purpose of the parties to sell the mortgaged property as an entirety, at least not until some scheme for reorganization can be perfected. In short, the real purpose of the foreclosure suit is the same as in the original suit of Winston and others. The case of Muller v. Dows certainly cannot support the claim of jurisdiction in the court at Milwaukee of that part of this case which is essentially a proceeding in rem.

It is my conclusion that it is the plain duty of this court to take cognizance of the charges made against the receivers and the allegations of the defendant in asking for their removal. Although it is true that this court appointed Messrs. Oakes, Payne, and Rouse, because they had been previously appointed by another court, and did not, in the choice of receivers, exercise its independent judgment, still their appointment stands as the act of this court, and before the court can, consistently with justice, vacate its order appointing them, it must give them an opportunity to make full answer to the allegations of the defendant contained in the affidavit of Mr. Ives. The court therefore orders that the case be set down for further hearing, upon a date to be fixed, as to questions relating to the fitness of the receivers to serve in that capacity, and the grounds for their removal from office set forth in said affidavit, and that, at least 10 days prior to the date of said hearing, they respond to said affidavit, by answer, plea, or demurrer, as they may elect.